# O'Leary, Appellant, *v.* Pittsburgh & Lake Erie Railroad Company.

*Negligence—Railroads—Railroad yard — Use as playground — —Permissive use—Infants — Trespassers — Evidence — Case for jury.*

1. While a railroad company has the right to insist upon the exclusive use of its tracks, and any person, infant or adult, going upon them is a trespasser, yet when the children of a community have for many years constantly used the railroad yards as a playground, with the company's knowledge and tacit acquiescence, the rights and duties of the parties change; children so using the yards and tracks are not trespassers, and it is the duty of the company to exercise such care towards them as the circumstances require.

2. In an action against a railroad company by the parents of a four year old boy to recover damages for his death, where it appeared that plaintiffs lived near a large unenclosed yard of the defendant company; that a short distance from plaintiff's residence and on the same side of such yard, was a piece of ground used by the children of the neighborhood as a common playground; that on the day of the accident deceased, after crossing several tracks and while attempting to recross into the playground, was struck by the last car of one of defendant's trains which was being run backward with no brakeman on the rear car; and where there was admittedly no negligence on the part of the parents of the deceased, the trial judge erred in excluding testimony offered in behalf of the plaintiffs, to the effect that the playground in question had been used as such almost daily by numbers of children for many years with the knowledge and acquiescence of the defendant, and in entering a compulsory nonsuit.

Argued Oct. 20, 1914.  Appeal, No. 40, Oct. T., 1914, by plaintiffs, from judgment of C. P. Allegheny Co., Second Term, 1911, No. 412, refusing to take off nonsuit, in case of Daniel O'Leary and Catherine O'Leary, his wife, v. the Pittsburgh & Lake Erie Railroad Company, a Corporation.  Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ.  Reversed.

Trespass to recover damages for the death of plaintiffs' minor son.  Before REID, J.

The opinion of the Supreme Court states the facts.

The trial judge entered a nonsuit which the court in banc subsequently refused to take off.  Plaintiffs appealed.

*Errors assigned* were rulings on evidence and the refusal of the court to take off the nonsuit.

*L. K. Porter,* for appellants.

*John J. Heard,* with him *George E. Shaw,* of *Reed, Smith, Shaw & Beal,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 11, 1915:

This is an action brought by Daniel O'Leary and his wife against the defendant railroad company to recover damages for the death of their four year old son who was killed January 6, 1911, while on one of the tracks of defendant company's yard at McKees Rocks, Pennsylvania.

The defendant has a large railroad yard in the northern portion of the Borough of McKees Rocks, Allegheny County, which consists of from eighty to one hundred tracks extending in an easterly and westerly direction, used by defendant for storing, switching and moving its cars and trains.  The yard is not enclosed by a fence, and is open from every point adjacent to the tracks.

On the south side of the yard, a short distance west of plaintiffs' residence, and opening upon the railroad tracks, is a piece of ground, open to the public, which is a common playground for the children of the neighborhood. The section is thickly populated and for many years prior to the accident resulting in John O'Leary's death the children of the neighborhood were accustomed to use the playground.

The plaintiffs, at the time of the accident, resided on Page street, in McKees Rocks, which lies south of and parallel to the defendant company's tracks. The yard surrounding their house was enclosed by a high board fence, preventing direct access to the street or alley immediately in the rear, called Harriet street. This street is from 15 to 18 feet wide, extends westerly to the playground, is not paved, and there is nothing but the track itself to indicate where the street ends and the railroad yard begins. The street is used by pedestrians and vehicles. A gate leads from the plaintiffs' premises to the rear yard of the adjacent property to permit access to a pump which stood there and is used in common by the families occupying the two premises.

The day of the accident John O'Leary who was then four years and three months old went from his father's yard through the open gate into the adjacent yard. He there met a boy less than ten years of age. He had his sled with him and seating himself on it he requested the older boy to pull the sled which he did. They passed out through the rear gate of the neighbor's property, which had been left open by some of the neighbor's boarders, to Harriet street. They proceeded along this street to the playground. After they had been there for about ten minutes the O'Leary boy saw something on the opposite side of the first railroad track which attracted his attention and, accompanied by the older boy, he crossed the track to get it. At this time there was a long freight train of sixty-seven cars standing on the track west of where the boys crossed, and another train standing east

of this point. The distance between the two trains does not appear by the evidence. After securing the object for which they had crossed the track, the children started to return to the playground on the opposite side of the track. They walked a short distance westerly along the track and then proceeded to cross it to the playground. When the O'Leary boy was in the middle of the track he was struck and killed by the backward motion of the rear car of the train which was put in motion by the engine at the western end of the train. There was no brakeman or flagman on the rear end of the train to give notice of its intended moving, nor was any signal by whistle or bell given before the train was started. The engine could not be seen from the rear end of the train. It is conceded by the learned court below that the O'Leary child escaped from the custody of his parents through no fault of theirs, and that their negligence did not contribute to the child's death.

The learned court below granted a compulsory nonsuit which it subsequently refused to take off. It held that the boy was a trespasser, that the company was not required to have a rear brakeman to see that notice was given to trespassers, old or young, of the approach of the train, and that the death of the child was not caused by the negligence of the defendant company. The plaintiffs have taken this appeal.

The ninth and tenth assignments of error relate to the rejection of certain offers of testimony made by the plaintiffs on the trial of the cause. The ninth assignment alleges error in the rejection of the following offer: "I propose to show there was a playground there, and that these yards were a playground for the children for fifteen years and better, and that for the purpose of showing that care should have been exercised, but was not exercised in this particular instance." This was to be followed by evidence that such use was made of the yards with the knowledge of the railroad authorities. The error complained of in the tenth assignment was the

rejection of the following question: "Mr. O'Leary, will you just tell us to what extent—you may state whether or not this yard of the Lake Erie around the point where your son was killed was a place in which children in large numbers and at all times of the day congregated and played."

Had the learned court below admitted the testimony contained in the offers it would have appeared, in addition to the other facts in the case, that the part of the defendant's yard where the accident occurred had been used for fifteen years in connection with the adjacent ground as a public playground where children in large numbers had been accustomed to congregate and play with the knowledge of the railroad authorities. Under the circumstances we know of no authority, and none has been cited by counsel, which holds that under such circumstances the plaintiffs' child was a trespasser to whom the defendant company owed only a duty as such, as held by the learned court below. The uncontroverted testimony in the case shows that this is a populous community where there are a great many children who have for many years used the ground adjacent to the railroad tracks as a playground, and had the testimony which was offered been admitted, it would have appeared that the playground, used for so many years by the children, included the part of the defendant's grounds where the child lost its life. It is true, that the railroad company had the right to the exclusive use of the property where its tracks are located, and it might have insisted upon such exclusive use and prohibited the entry upon it by any other party. It could have excluded all parties from making any use of the property whatever. It could have denied the use of this place as a playground and have prohibited the children of the community from using it as such. We have uniformly held that a railroad company has the exclusive right to the use of its tracks, except at public crossings or places of permissive use by others. This rule has been rigidly

enforced by this court, and hence the defendant here would have had no difficulty in asserting this right against the children as well as the adults of that community who sought to make any use whatever of the company's property. Had the plaintiffs been permitted to sustain their offer by proof, the evidence would have warranted the jury in finding that for many years prior to the accident the part of the company's premises where the accident occurred had been used constantly as a playground by the children of the neighborhood with the knowledge of the company or its employees operating its trains. This would have shown a permissive use of the premises by the defendant which would have imposed duties upon the company in operating its trains quite different from those owed to persons using the premises without its acquiescence. In other words, the defendant company had the right to insist on the exclusive use of its tracks, and any person, infant or adult, going upon them would be a trespasser, yet when constant use for many years had been made of them by the children of the community as a playground with the defendant's knowledge and tacit acquiescence, the rights and duties of the parties changed and those using the tracks under such circumstances cannot be regarded as trespassers to whom the company owed only a duty as such. Parties making use of the premises under those circumstances have the right to believe that it is without objection and with permission of the company and that it will exercise such care towards them as the circumstances require. In the language of Mr. Justice Agnew in Kay *v.* Penna. R. R. Co., 65 Pa. 269, 273, "The case is altered when, by a license to others, they have devoted this ownership to a use involving their interests and their safety; and by sufferance permitted the public to enjoy a privilege of passage which might bring their persons into danger." The defendant having permitted and acquiesced in the use of its ground as a public playground and the children of the community having used it as such without ob-

jection, it became the duty of the defendant to operate its trains with reasonable care for the protection of those who, by such permission, might be upon its tracks. This, it is true, was not a duty to a trespasser, but those who used the property as a playground with the company's permission cannot be regarded as trespassers entitled only to protection as such from the company. The permissive use of its tracks placed the defendant company in a different attitude toward the children playing upon its ground and imposed upon it different duties for their protection in its use. In moving its trains on the tracks, the defendant, therefore, did so with the knowledge that the children of the neighborhood had been for many years using the ground as a playground, and was required to anticipate that they would continue to do so. This imposed upon the company the duty of reasonable care in the operation of its trains over the tracks so as to avoid injury to those who might be making a permissive use of them. If the jury found that the defendant failed to exercise such care in the operation of its trains on the day of the accident which resulted in the death of John O'Leary it would be negligence which would impose liability. The evidence offered by the plaintiffs should have been admitted and the question of the defendant's negligence should have been submitted to the jury under proper instructions by the court. We do not understand there is any allegation of negligence on the part of the plaintiffs or their son.

The legal principles controlling this case have been announced in many of our cases, among others Kay v. Penna. R. R. Co., 65 Pa. 269; Henderson v. Continental Refining Co., 219 Pa. 384; Millum v. Lehigh & Wilkes-Barre Coal Co., 225 Pa. 214; Steele v. Lake Shore & Michigan Southern R. R. Co., 238 Pa. 295.

Some if not all of the other assignments of error are defective and need not be considered.

The ninth and tenth assignments are sustained, and the judgment is reversed with a venire facias de novo.