## Noonan et ux., Appellants, *v.* Pennsylvania Railroad Company.

Argued May 6, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Drayton Heard,* of *Heard & Heard,* for appellants.

*Robert D. Dalzell,* of *Dalzell, McFall & Pringle,* for appellee.

OPINION BY RHODES, J., September 29, 1937:

Plaintiffs brought this action of trespass against defendant to recover damages for the death of their minor son. The child, two and one-half years of age, was struck by the overhang of defendant's locomotive while sitting on the end of a tie on the main line of its Monongahela division in Pittsburgh. The jury rendered a verdict in favor of the plaintiffs; the court below entered judg-

ment n. o. v. for defendant, from which plaintiffs have appealed.

This accident happened near Eleventh Street in the section known as the "South Side" of the city of Pittsburgh. Defendant's railroad at this point consists of four main line tracks, running generally east and west. The tracks are at the foot of a hill which ascends very abruptly from the south line of defendant's right of way. To the north of defendant's right of way lies the flat section of the South Side district. Eleventh and Twelfth Streets run north and south, and Eleventh Street comes to a dead end at the railroad property. Twelfth Street is carried by a ramp to an overhead crossing providing access to the residential section on the south side of defendant's tracks. Between Eleventh and Twelfth Streets is a vacant lot which is private property. Defendant's right of way extends 14 feet from the north rail, or 12½ feet from the end of the ties, and is indistinguishable from the vacant adjoining private property. This vacant area between Eleventh and Twelfth Streets has been used for playground purposes by the children of the neighborhood. There they played ball and flew their kites. A rudely constructed backstop had been erected on that portion of the vacant lot not belonging to the defendant. Twelfth Street is on the east of this vacant area, Eleventh Street on the west, defendant's right of way and main line tracks on the south, and Maryann Street on the north. The widest portion of the area is at Twelfth Street, and it comes almost to a point at the Eleventh Street end. The backstop used for playing a game known as "mushball" was located near the intersection of Twelfth and Maryann Streets. Appellants' child, when struck, was sitting at a point in defendant's track where the midline of the westerly sidewalk of Eleventh Street, if projected, would cross the tracks.

The accident occurred about two o'clock on the after-

noon of October 2, 1933. The child had been playing in the back yard of its home located on Freiberg Street, which is one block north of defendant's tracks and runs approximately parallel thereto. Appellants' home was three houses from the corner of Eleventh and Freiberg Streets. For the child to have reached the point where the accident occurred it would have been necessary for him to have proceeded westerly along Freiberg Street to Eleventh Street, then southwardly on Eleventh Street to defendant's tracks, crossing Eleventh Street from east to west at some point in his progress.

As defendant's tracks approach the scene of the accident from the east there is a northward curve. Three overhead structures cross the tracks on this curve. One designated as the "big incline" (which serves the hilltop residents on the south side of defendant's tracks) is nearest the point of the accident, and is approximately 172 feet from the scene of the accident. The "little incline" is approximately 300 feet east from the scene of the accident. The third is the Twelfth Street crossing bridge. Westbound passenger trains must pass under these structures, and the supports are so close to the westbound passenger track as to require the engineer to keep his head within his cab and view the roadway through the front window. As the engineer on this occasion reached the Twelfth Street crossing bridge he could have obtained his first view of the place where appellants' child was sitting at a distance of about 578 feet. Appellants' witnesses admit that the supports of these overhead structures obscure the view from an approaching train. Defendant gave the measurements and introduced photographs showing the effect of these supports on the observation of an engineer. It was thus shown that after reaching the Twelfth Street crossing bridge, at a point about 578 feet distant from where the child was sitting, there is no interference for a distance of 103 feet. The view is then cut off while the

train travels 53 feet. There is then an open view for 64 feet, followed by interference for 50 feet, then an open view for 67 feet and interference again for 23 feet. Thereafter there is a clear view for approximately 213 feet to the place of the accident. It is obvious that the view of the location where the appellants' child was sitting on defendant's tracks was intermittent from the point where he might have been first observed until reaching a point about 213 feet distant from where the child was sitting. Defendant's train was traveling at approximately 40 miles per hour, or 60 feet per second. Defendant's passenger train on this occasion consisted of five passenger cars and an engine. Defendant's engineer did not see the child until he had passed the pillars or supports of the "big incline," or about 172 feet from it. He immediately applied the emergency brakes and blew the whistle. The overhang of the engine struck the child, and the last car of the train came to a stop about 80 feet beyond the place where the child had been sitting. It is not disputed that the train could not have been stopped within a distance of 213 feet, or even 500 feet.

Appellants' case was presented on the assumption that the main line tracks of defendant in the locality where this accident happened were a playground, and that it was the playground use of defendant's property up to its ties and over and across its tracks which raised the duty to anticipate possibility of injury to the children there playing.

Appellants' statement of claim set forth that by "long continued practice of the general public, and by reason of the tacit permission and consent of the defendant company to said practice, there came into existence a permissive passageway and crossing extending eastwardly from Tenth Street along the northerly side of the defendant's right of way and also diagonally in a southerly direction from the southerly terminus of Eleventh Street across the said defendant's tracks,"

......and that "son of the plaintiffs ...... walked from Eleventh Street onto the right of way of the defendant and, at the said defendant's implied request, onto the permissive passageway and crossing." Appellants presented no evidence of a permissive passageway extending from the southerly terminus of Eleventh Street across defendant's tracks at the point where their child was killed. Testimony was presented that the vacant land between Eleventh and Twelfth Streets was used by the children of the neighborhood for playground purposes, and that now and then the children playing in that vicinity would go upon the main line tracks of the defendant for the purpose of recovering a ball or a kite.

It was not obligatory upon the part of defendant to fence its right of way as appellants seem to insinuate. Nor did the intermittent trespass by children upon the main line tracks of defendant for the purpose of recovering a ball or kite make a playground out of defendant's main line. In this conduct defendant did not acquiesce. Appellants' witness, Mrs. Goldie Kaisar, testified that a railroad detective "brought my boy to the door and inquired if I was his mother and told me he caught the child on the tracks; that was my first knowledge that my child went to the tracks."

Appellants' child was sitting, at the time of the accident, on the railroad ties in a line with the westerly sidewalk of Eleventh Street. Appellants' testimony shows that the area east of Eleventh Street and extending to Twelfth Street was used for playground purposes. Several witnesses so testified. An example is the testimony of Stanley Tomczak. He testified: "Q. How much of the ground there in front of the backstop was used for play purposes? A. About up to this block here. Q. That is up to 11th street, you mean? A. Yes, sir. Q. Then how close to the railroad tracks did they play? A. About two yards away. Q. Well, when the ball went over the track, you say they went up over the track? A.

They did." Defendant had no control over the use of the vacant land adjoining its property, and it was under no obligation to fence its own. The occasional pursuit of a misplaced ball or chasing a kite onto the main tracks of the defendant by the children playing on the vacant lot between Eleventh and Twelfth Streets imposed no duty upon defendant to operate its trains in anticipation of children being on its tracks. The testimony does not bring defendant's tracks within the playground rule. Moreover, appellants' child was not within the playground area established by appellants' witnesses. In *Falchetti et ux. v. Pennsylvania R. R. Co.,* 307 Pa. 203, 206, 160 A. 859, it was held that even an alleged permissive way parallel with defendant's railway tracks and on its right of way, as distinguished from a permissive crossing over them, is not recognized in this state. See *Conn et al. v. Pennsylvania Railroad,* 288 Pa. 494, 136 A. 779; *Kolich v. Monongahela Railway Co.,* 303 Pa. 463, 154 A. 705. To approve of appellants' contention that defendant was bound to anticipate the presence of children on its main line tracks would create an unreasonable obligation on defendant and result in a condition whereby the practical operation of its trains would be made impossible. *Tiers v. Pennsylvania Railroad Co.,* 292 Pa. 522, 141 A. 487; *Koontz et al. v. Baltimore & Ohio R. R. Co.,* 309 Pa. 122, 129, 163 A. 212. The danger of entry on such tracks of defendant was obvious. It was a four-track main line; fast trains passed frequently; there was nothing on the tracks to attract children; they afforded no facilities for play. Defendant, under the circumstances, was under no duty to warn of that which was obvious *(DiMarco et al. v. Pennsylvania Railroad Co.,* 321 Pa. 568, 572, 183 A. 780), and there is no evidence that the defendant permitted its tracks to be used as a playground in such a manner and for such a length of time that presupposes an invitation or permission to occupy the same in this manner *(Hojecki et al. v. Phila-*

*delphia & Reading Railway Co.,* 283 Pa. 444, 448, 129 A. 327). The testimony of appellants' witnesses shows the contrary to be true.

We are unable to conclude, after careful consideration of the testimony, that appellants' child was other than a trespasser on defendant's tracks. It follows that the rule that defendant is not liable to trespassers, except for wanton and wilful acts, is applicable. "The defendant company used its property in this locality solely for the passage of trains, and it had the right not only to demand, but reason to expect a clear track. ...... The mere fact that the company did not so fence its right of way as to exclude children from its tracks did not involve a breach of duty which would render it liable in an action for damages": *Leithold v. Philadelphia & Reading Railway Co.,* 47 Pa. Superior Ct. 137, at page 146.

In *Counizzarri v. Philadelphia & Reading Railway Co.,* 248 Pa. 474, 94 A. 134, the child, when struck by the car, was not on the track but in that part of defendant's right of way used by its permission as a street. This case and that of *O'Leary v. Pittsburgh & Lake Erie Railroad Co.,* 248 Pa. 4, 93 A. 771, cited and relied upon by appellants to establish the proposition that the playground rule was applicable to defendant's main line tracks, have no application. In the O'Leary case it was held that the evidence which was excluded by the court below would have warranted the jury in finding that for many years prior to the accident the company's premises where the accident occurred had been used constantly as a playground by the children of the neighborhood with the knowledge of the company or the employees operating its trains, and that it would have shown a permissive use of the railroad yard of the defendant which would have imposed duties upon the company in operating its trains different from those owed to persons using its premises without its acquiescence.

Although appellants' child was of such age that it was not chargeable with contributory negligence, yet his status as a trespasser was not thereby altered. *Hojecki et al. v. Philadelphia & Reading Railway Co.*, supra, 283 Pa. 444, 447, 129 A. 327. Therefore, unless there was evidence indicating what amounts to a wilful or wanton act on the part of defendant or its employees resulting in the injury and death of appellants' child, there can be no recovery. Appellants produced no evidence of defendant's negligence, i. e., want of due care on the part of defendant's employee whereby the child was struck by defendant's engine after he was observed sitting on the ties of defendant's tracks. Defendant's engineer had no reason, and was not obliged, to anticipate the presence of the child where he had no right to be; and if he failed to make a timely discovery of his presence on the track it would not be a wanton act. *Reagan et ux. v. Reading Co.*, 126 Pa. Superior Ct. 175, 183, 190 A. 412. Cf. *Musto v. Lehigh Valley Railroad Co.*, 327 Pa. 35, 192 A. 888. See *Cover v. Hershey Transit Co.*, 290 Pa. 551, 139 A. 266. " 'Upon its general tracks, where the public have no equal easement or right of way, a railroad company may operate its trains without regard to the possibility that unauthorized persons may be trespassers thereon. It need not anticipate the presence of such intruders, either upon its general track or in its strictly private yards ......' ": *Conn et al. v. Pennsylvania Railroad,* supra, 288 Pa. 494, at page 509, 136 A. 779, at page 784. See, also, *Gray et al. v. Pennsylvania R. R. Co.*, 293 Pa. 28, 141 A. 621; *Brague v. Northern Central Railway Co.,* 192 Pa. 242, 43 A. 987; *Philadelphia and Reading Railroad Co. v. Hummell,* 44 Pa. 375.

Defendant's engineer testified that he first observed the child on the track when he came out from under the big incline; he was then about 172 feet distant from the child. He applied his brakes and blew the whistle. His

inability or failure to observe the child when he might have been momentarily visible as the engine passed under the Twelfth Street crossing bridge, then distant about 578 feet, and likewise his inability or failure to observe the child when visibility might have recurred for one or two seconds as he passed the supports of the other overhead structures, was not a wanton act and did not charge the defendant with liability. Immediately upon becoming aware of the threatened danger to the child he endeavored to stop his train. It is not disputed that it was impossible to stop and avoid striking the child after he first became aware of its presence on the track.

Appellants finally contend that a factual question was presented for the jury as to whether or not defendant's engineer did not actually see the child before he got within 213 feet of it, and cites *Peden et al. v. Baltimore & Ohio Railroad Co.,* 324 Pa. 444, 188 A. 586. In that case the Peden boys were walking on a spur track of the defendant company. They were struck by a freight train which was moving slightly upgrade at a speed of only 5 miles per hour. It was held that plaintiffs' case received enough support from the evidence given by the fireman and brakeman to carry it to the jury. Both employees had a full view up the spur track. They testified that they looked but did not see the children. After stating the rule (at page 446) that "to impose responsibility in such a case it must appear not only that defendant's employees *could* or *should* have seen the boys, but that they *did* see them, with sufficient opportunity to act in the light of such observation," the Supreme Court held that, notwithstanding these rigid requirements, the record disclosed sufficient evidence to compel submission to the jury of the question of defendant's liability. In the instant case it does not appear from the evidence that defendant's engineer, looking out of the front window of the cab of the engine, must have seen the child before he actually did, and could have stopped

his train and avoided the accident. The tracks were on a curve and vision was obscured by the supports of the overhead structures, and his attention was also required by the signals in the vicinity. Cf. *Gray et al. v. Pennsylvania R. R. Co.*, supra, 293 Pa. 28, pp. 32, 33, 141 A. 621. It does not follow, as in the Peden case, that looking ahead enabled him to see, or that the child must have been visible to him before he actually saw it and had he acted promptly the accident could have been prevented. We find no negligence on the part of defendant's employee disclosed by the evidence after giving every reasonable consideration to it in favor of appellants. We are consequently obliged to sustain the judgment of the court below.

Judgment is affirmed.