## Davies, Appellant, *v.* Delaware, Lackawanna and Western Railroad Company.

Submitted January 8, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*Edward M. Murphy*, for appellants, submitted a brief.

*Edward W. Warren*, *O'Malley, Harris, Harris & Warren* and *Gomer W. Morgan*, for appellee, submitted a brief.

OPINION BY MR. JUSTICE BELL, April 1, 1952:

This appeal is from an order of the lower court dismissing plaintiffs' motion to remove a nonsuit. Viewing the evidence in the light most favorable to plaintiffs, as we must where a nonsuit has been entered: *Szukics v. Ruch*, 367 Pa. 646, 81 A. 2d 903; *Pennsylvania R. R. Co. v. J. Jacob Shannon & Co.*, 363 Pa. 438, 70 A. 2d 321; the pertinent facts are as follows:

The decedent, aged 11, his sister Jane, and two other young children started to walk from the Davies home in Moscow, Pa., to Hollister, Pa., a town to the east. In order to reach their destination they walked eastwardly sometimes along the tracks and sometimes along the side of the tracks (referred to as the defendant's right of way). There were three tracks (6 rails) in the defendant's right of way. While there is no tes-

timony describing this right of way, the picture clearly shows on each side of the north and south tracks a few feet of shoulder with high sloping embankments. Jane and one of the children were walking on the south side of the tracks, while the decedent and the other child were walking on the north side of the tracks. As they walked, a freight train came along, likewise traveling east, on the center track. While the freight train was going by, a passenger train came along, traveling west, on the north track, and struck and killed the decedent. The view of decedent's 13 year old sister, who was the only witness who testified as to the accident, was completely obscured by the freight train. The tracks were straightaway for a quarter of a mile. *There is no evidence of whether the boy was on the tracks or on the ties, or how or where he was struck, or when he was first seen by the train crew, or how fast the train was running.* The train stopped about a quarter of a mile from the point of the accident.

The boy's body was found along the side of defendant's right of way, east of Martin's Crossing. Martin's Crossing is a dirt road which runs from a public highway through a field owned by a man named Martin, across the defendant's railroad tracks, ending in another field of Martin's on the other side of the tracks. The road was used solely by Mr. Martin and his employes in connection with the operation of his farm. *There was no evidence that the boy was struck or killed at or on Martin's Crossing.* Moreover, if the boy was struck where he fell, or if his body was thrown through the air after the impact, it could have been thrown by the train traveling westward only in a westwardly direction, and in either event, since his body was found *east* of the crossing the accident could not have happened at the crossing. It is therefore not necessary to decide what duty defendant would have owed decedent,

or whether defendant would have been liable if decedent had been struck at the crossing.

Appellants also contend that the court should have submitted to the jury the question of whether the place where appellants' son was struck was a playground. If the "playground rule" applies, then defendant must anticipate the presence of children on the track and would be liable for ordinary negligence; otherwise the child is in law a trespasser to whom the defendant is liable only for wilful or wanton negligence. The only evidence offered to establish a playground was that Mr. Davies and some children played a little touch football and a little baseball in two fields, one on each side of the railroad; that plaintiffs' daughter went to one of the fields to play and pick berries; and that one of the fields was used by children of the plaintiffs and of two other families as a playground. *There was absolutely no evidence that the playground* (if there was one) *included the right of way of the defendant's railroad;* indeed, the picture of the tracks and embankments along defendant's right of way clearly demonstrates that neither the tracks nor defendant's right of way afforded any facilities for play.

Moreover, even if it be assumed that there was a permissive crossing of the tracks, this would not authorize anyone to walk parallel with or longitudinally along (as did the deceased) the railroad right of way: *Miller v. Pennsylvania R. R. Co.,* 350 Pa. 424, 39 A. 2d 576; *Falchetti v. Pennsylvania R. R. Co.,* 307 Pa. 203, 160 A. 859: In *Miller v. Pennsylvania R. R. Co.,* 350 Pa. supra, this court, speaking through Mr. Justice STEARNE, said (p. 426): ". . . a permissive way could not parallel the tracks on the right of way." And in *Falchetti v. Pennsylvania R. R. Co.,* 307 Pa. supra, it was unequivocally stated: ". . . as the *Conn* and *Kolich* cases (supra) show, an alleged permissive way

parallel with plaintiff's [sic] tracks and on its right of way, as distinguished from a permissive crossing over them, is not recognized in this state." Even more important and conclusive (on this point), there is as we have seen no evidence that the accident occurred at Martin's Crossing.

The language of Judge (now President Judge) RHODES in *Reagan v. Reading Co.,* 126 Pa. Superior Ct. 175, 179, 190 A. 412, is particularly appropriate: "The children had no greater right to go on defendant's tracks than adults; they were trespassers, and there was no duty on defendant to expect them and prepare for their safety. To recover it was necessary for plaintiffs to establish wilful or wanton negligence on the part of the defendant. Such negligence must be shown by proof that the engineer had actual knowledge of the presence of the boys on the tracks in time to have stopped the train and thereby to have averted the accident. . . . 'Trevethan v. Philadelphia & Reading Ry. Co., 244 Pa. 414, 90 A. 796; Petrowski v. Philadelphia & Reading Ry. Co., 263 Pa. 531, 107 A. 381; Cover v. Hershey Transit Co., 290 Pa. 551, 139 A. 266': Peden et al. v. Baltimore & Ohio Railroad Co., 324 Pa. 444." See also to the same effect: *Falchetti v. Pennsylvania R. R. Co.,* 307 Pa. supra; *Noonan v. Pennsylvania R. R. Co.,* 128 Pa. Superior Ct. 497, 194 A. 212, and cases cited therein.

*In the present case there was neither allegation nor proof of wilful or wanton negligence.* The only evidence to prove any negligence was the testimony of decedent's 13 year old sister, who testified that the train did not sound a whistle or horn and was going fast. We do not know whether deceased was on the tracks or the ties, or where he was when he was hit, or how long he had been there, or which part of which car hit him, or how long he had been seen by defend-

ant. The mere happening of an accident does not give rise to any inference of negligence on the part of a carrier; and in the absence of special circumstances, it is settled law that a high rate of speed, even at public crossings, is not negligence per se: *Miller v. P. R. R. Co.*, 368 Pa. 507, 84 A. 2d 200.

This case is ruled by *Falchetti v. Pennsylvania R. R. Co.*, 307 Pa. supra. In that case the Court, speaking through Mr. Justice SIMPSON, said: "Plaintiffs sued to recover damages for the death of their minor son, who was struck by the overhang of the cylinder head on one of defendant's passing engines, while he was walking longitudinally on its right-of-way, immediately adjacent to its tracks. The boy was six years old, too young to be contributorily negligent; but he was nevertheless a trespasser on the right-of-way, and for an injury resulting under such circumstances defendant will not ordinarily be liable: Conn v. P. R. R. Co., 288 Pa. 494; Kolich v. Monongahela Ry. Co., 303 Pa. 463. Of course, if those in charge of defendant's train had known that he was upon its right-of-way, they would have been required to exercise care to avoid injury to him (Piepke v. Phila. & Reading Ry. Co., 242 Pa. 321), exactly as they would have been if there had been no alleged permissive way. But they had the right to presume, and act upon the presumption, that there were no such trespassers (Conn v. P. R. R., supra; Gray v. P. R. R. Co., 293 Pa. 28), and defendant will not be held liable, if the presence of the trespasser did not become known until it was too late to avoid the accident: Piepke v. Phila. & Reading Ry. Co., supra; Conn v. P. R. R., supra. The duty to exercise care after such presence becomes known is, of course, greater in the case of infants, who are not supposed to be as fully aware of their danger, than it is in the case of adults. In the instant case, however, there is neither aver-

ment nor proof that the child's presence on the right-of-way was in fact known in time to avoid the accident, . . . . It follows that the trial judge's refusal to defendant's point for binding instructions, and the court in banc's dismissal of its motion for judgment non obstante veredicto, were alike erroneous."

Plaintiffs' testimony was clearly insufficient to warrant submission to a jury of the question of wilful or wanton negligence.

The Order of the lower court is affirmed.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On May 11, 1942, Owen Davies, a boy eleven years of age, was struck and killed by a railroad train of the defendant company near the village of Daleville in Lackawanna County. Viewing the evidence in the light most favorable to the plaintiffs in the ensuing litigation, as all courts are required to do when considering a nonsuit, one could conclude the following facts were established at the trial.

Martin's Crossing, in the vicinity of which the accident occurred, passes over the right of way of the railroad company. The tracks at this point cut through land used by children as a playground, and in order to pass from one section of the playground to the other, it was necessary to cross the railroad tracks. Children had used this playground daily for three years prior to the accident. It was the custom of railroad trains approaching Martin's Crossing to sound a whistle warning and to diminish speed. The train which struck the minor decedent, however, observed neither of these precautions. The stretch of track at this point was straight, thus assuring the engineer an unobstructed view for more than a quarter of a mile. No fence or barrier separated the track from the playground.

Assuming the above facts to be true, and we are compelled to accept them as true since they were testified to at the trial, the jury should have passed on the question as to whether the railroad company was or was not guilty of negligence under all the circumstances.

A non-suit, as I view the law, should not be entered unless every possible hypothesis of negligence arising from the circumstances of the litigated event is conclusively negatived by the evidence in the case. The mere happening of an accident, of course, does not establish negligence, but neither does a theory of non-negligence forcibly extracted from the testimony deprive the injured party from having his case heard by the constitutional trier of facts, namely, the jury.

There is no doubt that a railroad company has the right to exclusive use of its tracks, but it may not use those tracks in such a manner as to visit tragedy upon others when the exercise of reasonable care could avoid' that tragedy. The law of humanity, while not accepted with statutory authority, still controls the logic of human responsibility. And this responsibility on the part of railroads has been recognized in numerous cases decided by this Court. In *O'Leary v. Pittsburgh & Lake Erie R. R. Co.*, 248 Pa. 4, 93 A. 771, a four year old boy, who was playing on the railroad company's tracks, was killed by a passing train. It was established at the trial that the tracks in question had for years been used as a playground by the children. In setting aside a non-suit ordered by the trial Court, the Supreme Court said: (p. 10) "The permissive use of its tracks placed the defendant company in a different attitude toward the children playing upon its ground and imposed upon it different duties for their protection in its use. In moving its trains on the tracks, the defendant, therefore, did so with the knowledge that the children of the neighborhood had been for many years using the ground as a playground, and was re-

quired to anticipate that they would continue to do so. This imposed upon the company the duty of reasonable care in the operation of its trains over the tracks so as to avoid injury to those who might be making a permissive use of them. If the jury found that the defendant failed to exercise such care in the operation of its trains on the day of the accident which resulted in the death of John O'Leary it would be negligence which would impose liability."

It is true that in the case at bar the tracks themselves were not the situs of the children's playing, but it is also true that land on both sides of the tracks was used for the playing of baseball and other sports, and the children used the railroad track in order to get from one side of the sports field to the other. This unquestioned situation charged the defendant with the responsibility of reasonable care to avoid injuring the children using the tracks since it could not help knowing, and the law under the evidence charged it with' knowing, the use to which they had put and were putting the railroad right of way.

Although the boy's body in the instant case was found a short distance above Martin's Crossing, this does not conclusively establish, for the purpose of a nonsuit, that he had not adopted the crossing as a passageway when he moved from one side of the track to the other.

In the case of *Hogan et al. v. Etna Concrete Block Co.*, 325 Pa. 49, 188 A. 763, the Supreme Court held, where the child trespasser was injured on the land of the defendant company which manufactured concrete blocks thereon: (p. 51) "Toleration of trespass for sufficient time gives rise to privilege which adds to the duties of the occupier in the maintenance and use of his premises: Kay v. Pennsylvania R. R. Co., 65 Pa. 269, 273. The 'playground rule' in Pennsylvania is a specialized application of this principle: See Fitzpatrick

v. Penfield, 267 Pa. 564, 572. Here there was ample testimony that for years children were wont to play daily on defendant's grounds without its objective disapproval. Therefore defendant may not disregard the likelihood of their presence in the conduct of its operations (O'Leary v. Pittsburgh and Lake Erie R. R. Co., 248 Pa. 4; Counizzarri v. Philadelphia and Reading Ry. Co., 248 Pa. 474) or in the maintenance of hazardous machines or artificial conditions."

The fact that the decedent child was a trespasser does not bar recovery in the present law suit. This Court said in *Rachmel v. Clark*, 205 Pa. 314, 320, 54 A. 1027: "It is strenuously urged that the child was a trespasser and that, therefore, in the use of their premises the defendants owed him no duty of protection against the injuries he sustained. Several cases decided by this court are cited in support of the proposition and as sustaining the contention of the defendants that by reason of the trespass there can be no recovery here. But those cases were ruled on a different state of facts and do not control the present case. . . . Here, as we have seen, the peculiar location of the ground where the accident occurred imposed the duty of reasonable care in the use of it on the defendants, and it is averred as the cause of action that the plaintiff's injuries were due to a negligent performance of that duty. This was a question for the jury."

"Where the owner of property invites or permits its use by the public, as a common, or for a playground, or a picnic ground, it is certainly the duty of the owner to use reasonable precautions to protect the public from the operation of dangerous machinery located thereon." *Millum v. Lehigh, Etc., Coal Co.*, 225 Pa. 214, 217, 73 A. 1106.

While the railroad company in this case did not permit the railroad to be utilized as a playground, it did permit its highly dangerous operation to be used as

a passageway between two sections of a playground and it therefore owed its, as it were, *permissive trespassers* a duty of reasonable care to avoid injuring them. It could well be that the jury would decide that the defendant company was not negligent and that it had met its obligations of reasonable care, but its obligations in this respect were not so clearly and conclusively discharged as to deprive the plaintiff of the right to have a jury pass upon that question.

The evidence in the case here could warrant a jury in concluding that the dead boy was struck at or near the permissive crossing and this, together with the fact that the company maintained no gates or watchman at that point and the train itself gave no warning, could well result in a verdict for the plaintiff.

In the case of *Steele v. L. S. & M. S. Rwy. Co.,* 238 Pa. 295, 299, 86 A. 201, where the plaintiff was injured at a railroad crossing the Supreme Court said: "No objection was made to such use of the crossings and it is clear that they were used by the defendant's knowledge and consent. . . . It was, therefore, the duty of the defendant to exercise its rights in view of the circumstances so as not to mislead persons to their injury without a proper warning of its intention to recall its permission: Kay v. Pennsylvania Railroad Company, 65 Pa. 269."

I would set aside the non-suit and order a new trial.