Thomas HELLER, Plaintiff,

v.

CONSOLIDATED RAIL CORPORATION a Pennsylvania Corporation, National Railroad Passenger Corporation, individually and trading as Amtrak, Villanova University, John Doe I, John Doe II and John Doe III, Defendants.

Civ. A. No. 79–4334.

United States District Court, E.D. Pennsylvania.

Sept. 30, 1982.

Ira J. Zarin, Zarin & Maran, Newark, N.J., for plaintiff.

Paul F.X. Gallagher, Margolis, Edelstein, Scherlis & Kraemer, Philadelphia, Pa., for Conrail and Nat. R. Passenger Corp.

Alan R. Kutner, Korn, Kline & Kutner, Philadelphia, Pa., for Villanova University.

## OPINION

DITTER, District Judge.

This action comes before the court on the defendants' motions for summary judgment. Plaintiff Thomas Heller, a student at Villanova University, brought this action against defendants Conrail, National Railroad Passenger Corporation ("Amtrak"), and Villanova University alleging that he was injured due to defendants' negligence when he climbed atop a boxcar which was temporarily stopped on tracks which cross the Villanova campus. As he reached the top of the boxcar, plaintiff came in contact with an overhead electrical wire which resulted in serious injuries to him.

The defendant railroads have moved for summary judgment on the ground that as a matter of law they are not liable for either wilful or wanton negligence, the standards by which their conduct is to be judged in view of Heller's being a trespasser on railroad property.[1] Defendant Villanova seeks summary judgment on the ground that in its capacity as a landowner of property adjacent to which there exists an allegedly dangerous condition, it owed no duty of care towards the plaintiff. For the reasons which follow, the defendants' motions for summary judgment will be granted.

1. Although Amtrak and Conrail are named as separate defendants, throughout this action they have acted in concert and have been represented by the same counsel. Furthermore, in their answer to plaintiff's interrogatory No. 30, these defendants stated that Amtrak would be solely responsible for payment of any damages awarded in this action. Therefore, I shall refer to them collectively as "the railroads."

2. There exists a factual controversy as to the length of time the train remained at the Villanova station. The defendants contend that the front section of the train was there only from about 3:00 P.M. until 4:00 P.M., while the plaintiff contends it remained there from 11:00 A.M. until 4:00 P.M. This factual dispute might preclude summary judgment if, as plaintiff argues,

## I. FACTS

On March 31, 1978, train P–9, a freight train owned by Amtrak and operated by Conrail employees, was travelling west from a freightyard in Camden, New Jersey, to its destination of Enola, Pennsylvania. The train, which consisted of 123 cars powered by two electrical locomotive engines, was travelling on a right of way owned by Amtrak. As the train passed through the Bryn Mawr station, located approximately one mile east of Villanova, two of the cars became uncoupled causing the train to stop. After informing the Bryn Mawr tower operator of the uncoupling, William Campbell, the engineman of train P–9, was instructed by the Bryn Mawr tower operator to move the front portion of the train, now consisting of approximately ninety cars, to the Villanova station. This would allow another train to pass through the Bryn Mawr interlock. In accordance with these instructions, the front portion was moved approximately one mile west to the Villanova station. It remained there for some time awaiting to be recoupled with the rear section.[2]

The tracks on which the train travelled go through the middle of the Villanova campus. The land on which they are located is owned by Amtrak, although Villanova owns the property adjacent to both sides and uses it for dormitories and classroom buildings. The railroad right of way in this area has four separate tracks and train P–9 was located on the third track of the west

the railroad had a duty to patrol the train during this time in order to guard against potential trespassers. If this duty exists, the duration of the stay might be material evidence of unreasonable conduct by the railroad in failing to patrol the train. Because this is a motion for summary judgment and the plaintiff is the nonmoving party, I will resolve this factual controversy in favor of the plaintiff. *Bogus v. American Speech & Hearing Ass'n*, 582 F.2d 277, 291 (3d Cir.1978). However, since no such duty to patrol exists, see *Dugan v. Pennsylvania Railroad Co.*, 387 Pa. 25, 127 A.2d 343 (1956), *cert. denied* 353 U.S. 946, 77 S.Ct. 825, 1 L.Ed.2d 856 (1957), I find this factual dispute to be immaterial and therefore summary judgment remains appropriate.

side of the right of way. Approximately 22 feet above the tracks, supported by steel girders, are power lines which carry 12,000 volts of electricity for electric locomotives which use the tracks. At the time of the accident, there were no fences on either side of the tracks as they cut through the campus. There is, however, an underpass at Villanova station, located approximately one mile from the accident site, which provides a walkway underneath the tracks to allow the students to walk safely from one side of the campus to the other.

At approximately 3:30 P.M., the plaintiff, Thomas Heller, and a friend, Carol Amadio, left Amadio's dormitory room on the Villanova campus to walk to the train. The purpose of their journey was to satisfy Heller's curiosity "to see a boxcar up close." (Heller deposition at 28). Upon leaving the dormitory, Heller and Amadio walked several hundred yards north, across a large grassy field, up a small hill to the tracks. While Amadio waited on the side of the tracks, Heller approached the train by crossing two sets of tracks. After climbing into two boxcars to look around, he then walked a few feet farther down the track to a third boxcar. This boxcar was approximately 50 feet long and 16 feet high with a metal ladder on the end leading to the top of the boxcar. Curious about what the top of the boxcar looked like, Heller walked to the end of the car and began to climb the ladder. As he reached the top of the boxcar, Heller came in contact with the overhead electrical wire, causing serious and permanent injuries.

## II. AMTRAK

A railroad owes a duty to a trespasser[3] to avoid wilful or wanton misconduct. *Dugan v. Pennsylvania Railroad Co.*, 387 Pa. 25, 127 A.2d 343 (1956), *cert. denied* 353 U.S. 946, 77 S.Ct. 825, 1 L.Ed.2d

856 (1957). Wilful and wanton misconduct are distinct standards and must be analyzed separately. *Evans v. Philadelphia Transportation Company*, 418 Pa. 567, 573, 212 A.2d 440 (1965). As the Pennsylvania Supreme Court explained in *Evans*, "wilful misconduct means that the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain that it would ensue. This, of course, would necessarily entail actual prior knowledge of the trespasser's peril." *Id.* at 574, 212 A.2d 440. On the other hand, wanton misconduct "means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm will follow. It usually is accompanied by a conscious indifference to the consequences." *Id.*

A crucial difference between wilful and wanton misconduct is that wilful misconduct requires actual knowledge of the victim's presence, whereas wanton misconduct contains no such requirement. In the present case, there has been no evidence presented that the railroad employees had any actual knowledge of the presence of Thomas Heller. In fact, William Campbell and Donald Bruce, the engineman and the front brakeman, respectively, remained in the lead engine from the time it arrived at Villanova station until they were notified of the plaintiff's injuries. (Campbell deposition at 94, 95). Heller was injured on the 37th car from the lead engine (Conrad deposition at 52) and since there is a curve in the track just before the Villanova station, it would have been all but impossible for either Campbell or Bruce to have seen Heller prior to the

---

3. By framing its argument that the defendant railroads have engaged in "reckless or wanton conduct," Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 10, plaintiff has tacitly conceded his status as a trespasser. Even if this tacit admission did not exist, I find that the plaintiff was a trespasser as a matter of law. § 329 Restatement (Second) of Torts defines a trespasser as

"a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." In the present case, the plaintiff entered onto the railroad tracks and boxcars without the consent or knowledge of either Amtrak or Conrail, and therefore falls squarely within the trespasser definition.

accident. Moreover, William Conrad and Vernon Ward, the conductor and rear brakeman, respectively, remained with the 30 cars of the uncoupled rear portion of the train near Bryn Mawr until after the accident had occurred. (Conrad deposition at 49–51). Since no railroad employees had actual prior knowledge of Heller's presence, wilful misconduct cannot be established. Therefore, I next consider whether the railroad was liable for wanton misconduct.

■ In contrast to wilful misconduct, wanton misconduct may exist even if the actor is unaware of the trespasser's actual position of danger. The crucial point in determining wantonness is whether or not the actor had sufficient warning of the possibility of the victim's peril. Actual knowledge constitutes only one manner of appraisal. *Evans, supra*, at 574, 212 A.2d 440. The question in this case is whether there is any evidence to indicate that the railroad employees had reason to know of the imminent danger which the plaintiff faced.

■ I begin from the premise that a railroad is entitled to assume and act upon the assumption that its property is free from trespassers. *Davies v. Delaware, Lackawanna & Western Railroad Co.*, 370 Pa. 180, 87 A.2d 183 (1952); *Tedesco v. Reading Co.*, 147 Pa.Super. 300, 304, 24 A.2d 105 (1942). The record before me is void of any facts which would support an inference that the railroad employees should have known of the plaintiff's imminent peril. As was previously stated, Campbell and Bruce were the only employees of the defendant railroads who could have had an opportunity to see the plaintiff. However, because of the location of the lead engine relative to the site of the accident, it would have been virtually impossible for them to have seen him. Moreover, since the plaintiff by his own admis-

sion was on the tracks for no longer than 20 minutes (Heller deposition at 13–15), the likelihood of Campbell or Bruce spotting the victim prior to his accident is substantially diminished.

■ Plaintiff argues that the railroads would have had reason to know of plaintiff's presence if they had patrolled the length of the train during its temporary stop at Villanova station. There are both legal and practical problems with this argument. First, it is well settled in Pennsylvania that a railroad has no duty to patrol its stationary cars. See *Scibelli v. Pennsylvania Railroad Co.*, 379 Pa. 282, 108 A.2d 348 (1954); *Shaw v. Pennsylvania Railroad Co.*, 374 Pa. 8, 96 A.2d 923 (1953); *Tiers v. Pennsylvania Railroad Co.*, 292 Pa. 522, 141 A. 487 (1927). Courts have recognized that the imposition of such a duty would result in an unduly burdensome task for the railroad and would frustrate its ability to operate with any degree of effectiveness. See *Scibelli, supra*, at 289, 108 A.2d 348.

Aside from the legal roadblock, the practical effect of such action in this case is questionable. It is undisputed that Campbell and Bruce, who remained in the front engine of train P–9 during the entire time at Villanova, were the only railroad employees on the front section of the train, consisting of 90 cars. Obviously, if both men had left to guard against possible trespassers, the engine would have been abandoned, creating a sizable risk itself. Moreover, the utility of one man trying to patrol both sides of a 90 car train would have been minimal.

■ I am therefore forced to conclude that there is no evidence from which a jury could infer that the railroads had reason to know of the plaintiff's peril; therefore they cannot be held liable for wanton misconduct.[4]

4. The analysis above is equally applicable to an analysis under § 336 of the Restatement (Second) of Torts (1966). Section 336 states:
A possessor of land who knows or who has reason to know of the presence of another

who is trespassing on the land is subject to liability for physical harm thereafter caused to the trespasser by the possessor's failure to carry on his activities upon the land with reasonable care for the trespasser's safety.

The facts in this case readily distinguish it from cases where courts have held railroads to be on notice of the presence of trespassers. Plaintiff cites for support *Toner v. Pennsylvania Railroad Co.*, 263 Pa. 438, 106 A. 797 (1919), where the plaintiff was injured as he rescued a child who was playing in the path of a moving train. The tracks were located in the middle of a road in a densely populated residential area. Because the railroad knew that children regularly played on the tracks, the railroad was held to have anticipated that they would continue to do so. *Id.* at 441, 106 A. 797. In the present case, there is no evidence that the cars were used as a playground by students whenever freight trains stopped at Villanova station.[5] Indeed, there is evidence that freight trains rarely, if ever, stopped at Villanova (Campbell deposition at 96).

Similarly, in *Frederick v. Philadelphia Rapid Transit Co.*, 337 Pa. 136, 10 A.2d 576 (1940), plaintiff was injured when he slipped from a subway platform into the path of an oncoming subway car. After his body triggered an automatic braking system, the conductor was told that a man had fallen beneath the platform and he made a cursory examination. Finding nothing beneath the train, the conductor proceeded forward, thus causing the train to strike the plaintiff a second time. The court found under those facts that the defendant was put on notice as to the presence of the trespasser at the time the train went into its emergency stop. In contrast, it was not until after the accident in the present case that the defendants learned of the plaintiff's presence.

Even if, *arguendo*, the defendants here knew or should have known of the presence of the plaintiff, his theories of liability are unavailing. Plaintiff argues initially that the railroad is liable for its failure to erect a fence along its tracks to prevent access to them. This argument is flawed for two reasons. First, Pennsylvania law clearly imposes no duty upon a railroad to fence its right of way to prevent trespassing. *Dugan v. Pennsylvania Railroad Co.*, 387 Pa. 25, 127 A.2d 343 (1956); *Noonan v. Pennsylvania Railroad Co.*, 128 Pa.Super. 497, 194 A. 212 (1937). Second, the lack of any fencing was clearly not a proximate cause of plaintiff's injuries. This contention might be more tenable if plaintiff had been struck by a moving train as he was crossing unfenced tracks.

Similarly, plaintiff's arguments that the defendants are liable for failing to warn of the existence of the overhead wires and for placing the electrical wires too low for safe clearance also fail.[6] First, the plaintiff was generally aware that some of the trains using the tracks were powered by electricity (Heller affidavit at 2) and that the overhead wires contained electricity (Heller deposition at 12). Second, in order to impose liability upon the defendants for these acts, it must have been reasonably foreseeable to the defendant that the plaintiff's injuries would result

---

Under this provision, if the landowner has reason to know of the presence of a trespasser, he is liable for failing to exercise reasonable care—a negligence standard. In contrast, if a landowner has reason to know of the presence of a trespasser under the traditional "wantonness" standard, he is liable only upon a showing of recklessness. See *Evans v. Philadelphia Transportation Co.*, 418 Pa. 567, 574–75, 212 A.2d 440 (1965). Although a lesser showing of fault by the landowner is required under the § 336 standard, even if that provision were applied in the present case, it would not change the outcome. The first prong of both analyses is a showing that the landowner knew or had reason to know of the presence of the trespasser. As I concluded above, there has been no such showing here.

5. Despite plaintiff's inferences to the contrary, the doctrine of attractive nuisance is clearly inapplicable in a case involving a 21 year old college student.

6. Plaintiff argues that since the National Electrical Code requires a 10 foot clearance between a pedestrian platform and an overhead voltage conductor, the height of the wire over the boxcar was unsafe. (See Engineering Report of Ralph M. Bozarth, at 2, attached to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment). This attempted analogy between a boxcar roof and a pedestrian platform is patently inapposite.

from the defendant's actions. See *Quinones v. United States*, 492 F.2d 1269, 1273 (3d Cir.1974). In the present case, it was not reasonably foreseeable to the defendants that the plaintiff would trespass upon its land, climb upon its boxcar, and be injured by electrical wires 22 feet above the tracks. Therefore, in light of the fact that railroads are entitled to assume that their property is free from trespassers, *Davis v. Delaware, Lackawanna, & Western Railroads Co.*, 370 Pa. 180, 87 A.2d 183 (1952), it cannot be said that the defendant was negligent for failing to warn of the overhead electrical wires and for placing the electrical wires too low for safe clearance.[7]

## III. VILLANOVA

■ It is well established that "a negligence claim must fail if based on circumstances for which the law imposes no duty of care on the defendant." *Bradshaw v. Rawlings*, 612 F.2d 135, 138 (3d Cir.1979), *cert. denied*, 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980). See *Shade v. United States*, No. 81–0881 (E.D.Pa. Oct. 29, 1981). The issue here is whether Villanova, either in its capacity as a university or as a landowner of property adjacent to which there exists an allegedly dangerous condition, owed any duty of care to the plaintiff. Because Villanova owed no duty to the plaintiff in either capacity, summary judgment must be granted in favor of this defendant.

■ I have found no cases, and have been directed to none, in which the landowner of property adjacent to that on which another person is injured has been held to owe any duty of care to that individual, absent any causal connection between the landowner's property and the plaintiff's injuries. To the contrary, the law appears

clear that no such duty exists. In *Cousins v. Yaeger*, 394 F.Supp. 595 (E.D.Pa.1975), the minor plaintiff was injured when struck by a train after allegedly crossing over land owned by the defendant which was adjacent to the railroad tracks. In granting the defendant landowner's motion for summary judgment, the court stated:

No case has been brought to our attention wherein there has been imposed upon a possessor of land a duty to erect fencing or other protective devices or warnings to deter trespassing children from entering a third person's property on which there exists a dangerous condition not created or maintained by the landowner and over which he has no control. As a matter of fact, there are cases which hold that possessors of land have no such duty....

The imposition of a duty to fence one's land which adjoins a railroad right-of-way would under the facts of this case produce an incongruous result since the Pennsylvania cases hold that there is ordinarily no duty on a railroad to fence its right of way to prevent children from trespassing. *Dugan v. Pennsylvania R.R. Co.*, 387 Pa. 25, 127 A.2d 343 (1956); *Malischewski v. Pennsylvania R.R. Co.*, 356 Pa. 554, 52 A.2d 215 (1947).

*Cousins, supra*, at 605.

■ Although *Cousins* involved a trespassing minor, I see no reason to divert from its rationale in the present case. While Heller could be categorized as an invitee as to Villanova when he crossed the Villanova property to gain access to the tracks, this difference from *Cousins* does not permit a different result. As an invitee on Villanova's land, Heller was entitled to receive warning of dangerous conditions existing on it. *Winkler v. Seven Springs*

---

7. Plaintiff contends that the railroads' status as suppliers of electrical current obligates them to exercise the "highest degree of care practicable" in their operations to avoid injury to others, citing *Brillhart v. Edison Light and Power Co.*, 368 Pa. 307, 82 A.2d 44 (1951). However, this heightened duty of care extends only to those *lawfully* in proximity to the wires. *Brillhart, supra*, at 312, 82 A.2d 44. The standard of care

owed to trespassers by suppliers of electricity is a duty to avoid wilful and wanton injury. See *Riedel v. West Jersey & S.R. Co.*, 177 F. 374 (3d Cir.1910); *Walsh v. Pittsburgh Ry. Co.*, 221 Pa. 463, 70 A. 826 (1908). Therefore, even if I accepted plaintiff's categorization of defendants' status, the analysis above would be equally applicable and would not alter the result here.

*Farm,* 240 Pa.Super. 641, 359 A.2d 440 (1976), *aff'd* 477 Pa. 445, 384 A.2d 241 (1978). However, the law imposes no duty upon a landowner to guard against allegedly dangerous conditions which exist on adjoining property.

The law is equally clear that Villanova's status as a university imposes no special duty upon it to protect its students from their own volitional acts. In *Bradshaw v. Rawlings,* 612 F.2d 135 (3d Cir.1979), *cert. denied,* 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980), the Third Circuit stated that, "the modern American college is not an insurer of the safety of its students. Whatever may have been its responsibility in an earlier era, the authoritarian role of today's college administrations has been notably diluted in recent decades.... College students today are no longer minors; they are now regarded as adults in almost every phase of community life." *Id.* at 138–39. In *Bradshaw,* the court held that under Pennsylvania law a college owes no duty of care to a 19 year old college sophomore who was injured as a passenger in a car driven by another student who became intoxicated at a college sponsored picnic where the alcohol was purchased by a college official. Emphasizing that the "students have reached the age of majority and are capable of protecting their own self interests," *id.* at 140, the Court held that no duty existed as a matter of law. Similarly in the case at bar, the plaintiff is a 21 year old adult fully capable of protecting his own self interests.[8] Unfortunately, he alone is responsible for

climbing the railroad car and its tragic results.

## IV. CONCLUSION

In view of the fact that Heller was a trespasser on railroad property and the railroads were neither guilty of wilful or wanton misconduct, summary judgment must be granted to them. Similarly, the absence of any duty on Villanova's part to plaintiff requires summary judgment in its favor.

8. In light of my disposition of this case, I do not address defendants' argument that the plaintiff is contributorily negligent as a matter of law. Nevertheless, the facts here would strongly suggest a finding of contributory negligence. In Pennsylvania, "one who fails to observe a dangerous condition plainly visible and nevertheless proceeds without regard to his own safety must be held guilty of contributory negligence as a matter of law." *Miller v. Exeter Borough,* 366 Pa. 336, 341, 77 A.2d 395 (1951). Under 42 Pa.C.Stat.Ann. § 7102 (Purdon 1982) if the plaintiff is more than 50 percent negligent, he is barred from recovery. In the present case, plaintiff has testified that he was aware prior to the date of the accident that there was electrici-

ty in the wires above the tracks. (Heller deposition at 12). Moreover, he was aware that if one contacted a live electrical wire, one could be shocked or electrocuted. *Id.* at 32–33, 98. Finally, there was nothing which would have obstructed his view of the overhead wires. *Id.* at 96. Under these facts, it would be reasonable to conclude that the plaintiff failed to observe a plainly visible dangerous condition and is therefore contributorily negligent. However, because contributory negligence as a matter of law should be declared only in extreme cases, *Tonik v. Apex Garages,* 442 Pa. 373, 275 A.2d 296 (1971), I do not rest my conclusion upon this ground.