KAREN KALINOWSKI *vs.* RICHARD JOYCE SMITH, trustee.

Suffolk.    October 16, 1978. — December 29, 1978.

Present: KEVILLE, ARMSTRONG, & BROWN, JJ.

*Negligence*, Railroad: child on track; Trespasser. *Practice, Civil*, Directed verdict.

In an action to recover damages for personal injuries sustained by a four year old child when she was struck by a commuter train, the judge erred in directing a verdict for the defendant at the close of the plaintiff's opening where, on the facts alleged in the opening, the jury could have found that the child, in placing herself in a position of danger, lacked the understanding to evaluate her peril and that her predicament was manifest to the engineer and conductor of the train who were, therefore, under a duty to sound a warning and slow the train in an effort to avoid injury to her. [770–772]

CIVIL ACTION commenced in the Superior Court on September 12, 1974.

The case was tried before *Donelan*, J., a District Court judge sitting under statutory authority.

*Herbert D. Lewis* for the plaintiff.

*John D. Dwyer* for the defendant.

KEVILLE, J. In this action to recover damages for personal injuries sustained in an accident involving a single car commuter train (a Budliner) of the New York, New

Haven and Hartford Railroad, the motion of the defendant, trustee of the railroad, for a directed verdict was allowed at the close of the plaintiff's opening. The plaintiff appeals from the judgment entered pursuant to that ruling.

"In ruling on a motion for a directed verdict on the opening, the judge must take all the statements in the opening as true, and in the light most favorable to the plaintiff, and if any reasonable view of the facts and rational inferences therefrom can be deemed sufficient to support the plaintiff's cause of action, the motion must be denied." *Matranga* v. *West End Tile Co.*, 357 Mass. 194, 196 (1970), and cases cited.

Relevant facts drawn from the plaintiff's opening are as follows: About 4:30 on the clear, dry afternoon of August 29, 1964, the plaintiff, then four years and eight months old, went from her backyard to an area adjacent to a railroad track used by a daily commuter train running from Needham to Boston. On this day as on many prior occasions, the plaintiff was accompanied by an eight year old boy. The plaintiff went to a clearing and stood in the open beside the track to wave to the "trainman" in the passing train as she had on 100 to 200 previous occasions.

The track was level and straight in both directions and visible for a distance of at least 600 feet to a street crossing in the direction from which the train approached. As the train reached the crossing it sounded its whistle and continued in the direction of the plaintiff at a speed of 20 to 25 miles an hour. Thereafter the train did not sound its whistle or horn or slow down and continued at the same rate of speed as it approached the area where the plaintiff was standing. Her companion stood to her right and about four or five feet behind her. At no time did she move her feet or change her position beside the track as the train approached. When the train was between 200 and 300 feet away, two men, the engineer and the conductor, could be seen in the front part of the train. At that

point the plaintiff began waving, and when the train reached a point between 100 and 150 feet away, the conductor waved back. Then as the train passed her it struck her and she suffered serious and permanent injuries.

*Pridgen* v. *Boston Housing Authy.*, 364 Mass. 696 (1974), modified the traditional rule that the owner or occupier of land owes to a trespasser only the duty to refrain from wilful, wanton or reckless conduct. *Id.* at 705. *Pridgen* held that where, as in that case, a property owner learns that a trespasser is "helplessly trapped" on his premises, the owner owes to the trespasser a duty to exercise reasonable care to prevent injury to him including, if necessary, the duty to take reasonable affirmative action (*id.* at 711-713).

In *Pridgen,* the plaintiff, an eleven year old boy, was "helplessly trapped" after he had climbed through an opening in the roof of an elevator in a housing project and had then slipped from the roof and had become caught in the elevator shaft. *Id.* at 700. It is clear from the facts alleged in the instant case that the position taken by the child beside the tracks, from which she did not thereafter move, placed her, apparently oblivious to her peril, in the path of the approaching train. Although she was not in fact physically trapped, her position of danger, coupled with her age, could be found tantamount to that of the helplessly trapped child in *Pridgen.* When her presence in that position became known to the trainmen, it became their duty to exercise reasonable care to avoid injury to her. *Dobb* v. *Baker,* 505 F.2d 1041, 1043 (1st Cir. 1974).

It has been held that railroad employees may assume that an adult near a railroad track will exercise care for his own safety but that the railroad is under a duty to sound a warning or slacken the speed of its train where a pedestrian manifests an intention to cross the tracks, see *McNally* v. *Trustees of N.Y. N.H. & H.R.R.*, 325 Mass. 367, 370 (1950), or manifests physical or mental disability

or infirmity, *Gannett* v. *Boston & Me. R.R.*, 238 Mass. 125, 131 (1921).[1]

In factual contexts differing somewhat from those presented in this case our courts have held that the duty of care owed to a child is to be determined in part with reference to the propensity of young children for unpredictable behavior. See *Brown* v. *Knight*, 362 Mass. 350, 352 (1972); *DiIorio* v. *Tipaldi*, 4 Mass. App. Ct. 640, 643-645 (1976); *Reese* v. *McGinn Bus Co.*, *post* 916 (1978). Cases in other jurisdictions, which, we conclude, are consistent with the principles found applicable in these Massachusetts cases, have held that there is no right to presume that a child of tender years will either get out of the way or remain out of the way of an approaching train (*Kowaleski* v. *Pennsylvania R.R.*, 103 F.2d 827 [3d Cir.], cert. denied, 308 U.S. 556 [1939]; *Simmons* v. *Atlanta & W.P.R.R.*, 46 Ga. App. 93 [1932]; see *Davies* v. *Delaware L. & W.Ry.*, 370 Pa. 180, 185-186 [1952]) and that the duty of care on the part of the railroad's employees arises as soon as a child is seen near the tracks in an imperiled position (*Livingston* v. *Wabash Ry.*, 170 Mo. 452, 470 [1902]; see Annot., 3 A.L.R.2d 753, 799-802 [1949]).

Therefore, on the facts alleged in the opening in this case, we conclude that a jury could properly find that this child, in placing herself in a position of danger, lacked the understanding to evaluate her peril and that her predicament was manifest to the defendant's agents who were, therefore, under a duty to sound a warning and slow the train in an effort to avoid injury to her.

*Judgment reversed.*

---

[1] See Restatement (Second) of Torts § 336 (1965), which in Comment a states that a landowner is held to a duty of reasonable care "after he knows or *has reason to know* that the trespasser is upon his land and is likely to be harmed unless the [landowner's] activities are carefully carried on" (emphasis supplied). see also Comment b, Illustration 1, and the discussion in *Conry* v. *Baltimore & O.R.R.*, 195 F.2d 120, 125-126 (3d Cir. 1952).