JOHN MCDONALD[1] vs. CONSOLIDATED RAIL CORPORATION.[2]

Hampden.   October 6, 1986. — January 12, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Negligence,* Railroad, One owning or controlling real estate, Child tres-
passer. *Practice, Civil,* Instructions to jury, Deliberation of jury, Inter-
rogation of jurors, Conduct of juror, New trial. *Jury and Jurors. Evi-
dence,* Relating to deliberation by jurors.

In an action by a child trespasser to recover for injuries suffered when he was
struck by a train and knocked off a railroad trestle owned by the defend-
ant, the judge did not err in declining to instruct the jury that landowners
like the defendant are duty bound to exercise reasonable care with respect
to all foreseeable child trespassers, where there had been no showing
that the plaintiff was a person who, because of his youth, did not discover
the condition or realize the risk involved. [28-29]
In an action by a sixteen year old plaintiff to recover for injuries suffered
when he was struck by a train and knocked off a railroad trestle owned
by the defendant, the judge did not err in failing to instruct the jury that
railroad employees may not rely on children to remove themselves from
the peril of oncoming trains. [30-31]
The judge in a civil case did not err in denying the plaintiff's posttrial motion
to question a juror as to his alleged bias against the plaintiff's attorney,
where any such bias reflected the juror's subjective mental process and
did not constitute an extraneous, disturbing influence. [33]
The judge in a civil case did not abuse his discretion in denying the plain-
tiff's posttrial motions to question a juror concerning certain allegations
of jury tampering, and for a new trial based on prejudice supposed to
arise from that juror's misconduct, where the plaintiff presented insuffi-
cient evidence of actual tampering with the jury's deliberations, and
where the plaintiff failed to show that the denial of his motion for a new
trial, unless reversed, would result in manifest injustice. [34-35]

CIVIL ACTION commenced in the Superior Court Department
on May 30, 1979.

---

[1] By his father and next friend, Edward McDonald.

[2] Also known as Conrail.

The case was tried before *John F. Murphy, Jr.,* J., and posttrial motions were heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael G. West* for the plaintiff.

*Samuel A. Marsella* for the defendant.

LIACOS, J. On August 14, 1978, the sixteen year old plaintiff, while traveling by bus from Vermont to Maryland, encountered a thirty-minute layover in Springfield, Massachusetts. During that delay, he left the bus station and wandered onto a nearby railroad trestle owned by the defendant. While he was on the trestle, a Conrail freight train moving at six to eight miles an hour approached him. The operator of the train (the conductor) first saw the plaintiff from a distance of 1,250 feet. The train could have been stopped within a space of 150 feet. The plaintiff waved to the conductor, and, when the train was 120 feet from the plaintiff, he disappeared behind a girder. When the train was fifty feet away from him, the plaintiff reappeared on the railroad track. When approximately thirty feet from the plaintiff, the conductor braked the train, but the plaintiff was hit by it. The plaintiff was knocked off the trestle to the rocks of the Connecticut River, forty feet below. He suffered serious injuries.

At trial, the plaintiff stipulated that he had been a trespasser on Conrail's trestle at the time of his injury. He made no claim that Conrail's agents acted recklessly, wantonly, or wilfully. The case was sent to the jury on special questions after the plaintiff seasonably objected to the judge's instructions on the duty of care that is owed to child trespassers. The jury found that: (a) the plaintiff was "able to appreciate and realize the risk involved in trespassing" on the bridge; (b) the plaintiff was not "helplessly trapped in a position of peril . . . prior to the accident"; and (c) the defendant was not negligent, either "in failing to eliminate a danger or to otherwise protect children trespassers from an artificial condition on its land" or "in the operation of [its] train."

On October 1, 1984, judgment was entered for the defendant, and the plaintiff appealed. One month later, the plaintiff sought

relief from judgment and a new trial, and he petitioned the court to question a juror "as to his bias and/or prejudice during the trial." The judge denied the plaintiff's motions, and he appealed. We transferred the case to this court on our own motion.

The plaintiff argues that a new trial is required (1) because the judge erroneously instructed the jury concerning the common law duty of care owed to foreseeable child trespassers; (2) because he was prejudiced by the judge's failure to give a promised instruction; and (3) because the judge erred in denying his motion to question a juror and his motion for a new trial. There was no error.

1. *Jury instructions.* The judge instructed the jury that ordinarily the defendant would owe the plaintiff, a trespasser, a duty of care only to refrain from wilful, wanton, or reckless conduct that might cause him injury. See *Pridgen* v. *Boston Hous. Auth.,* 364 Mass. 696, 705 (1974), and authorities cited. See also *Schofield* v. *Merrill,* 386 Mass. 244, 245-246 (1982). The judge went on to explain that, although the plaintiff was not alleging wilful, wanton, or reckless conduct by Conrail, the plaintiff claimed that the defendant owed him a duty of reasonable care because the circumstances of this case met the requirements of one or more exceptions to the general rule. Accordingly, the judge instructed the jury on the elements of G. L. c. 231, § 85Q. This exception to the common law rule as to trespassers imposes the duty of reasonable care in statutorily specified circumstances.[3] The judge also explained the ele-

---

[3] The judge read the statute in its entirety to the jury:

"Any person who maintains an artificial condition upon his own land shall be liable for physical harm to children trespassing thereon if (a) the place where the condition exists is one upon which the land owner knows or has reason to know that children are likely to trespass, (b) the condition is one of which the land owner knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, (d) the utility to the land owner of maintaining the condition and the burden of eliminating the danger

ments of an exception carved out by this court in *Pridgen, supra,* whereby a duty of reasonable care is owed by landowners once they have discovered a trespasser, regardless of age, helplessly trapped on their premises. *Id.* at 713. The plaintiff does not dispute the correctness of these instructions. The plaintiff argues, however, that the judge erred by failing to give additional instructions on the duty owed child trespassers, in accordance with his written requests. We consider each request separately.

a. *Requested instruction no. 6.* The plaintiff's request no. 6 stated: "In addition to the duty of the railroad created by statute, the Commonwealth of Massachusetts also places a common law duty of reasonable care by the Defendant to prevent harm to foreseeable child trespassers. *Soule* v. *Massachusetts Electric Company,* 378 Mass. 177 . . . (1979)." By contrast, the judge's charge repeatedly emphasized that the duty arises at common law only where the jury find the additional fact that the plaintiff was "too young to appreciate the risk and danger involved," or that he "lacked the understanding to evaluate the peril." Thus, the issue is whether the plaintiff was entitled to an instruction that landowners like Conrail are duty bound to exercise reasonable care with respect to all foreseeable child trespassers.

In recent years, this court has recognized a landowner's duty of reasonable care to all persons lawfully on his property. See *Mounsey* v. *Ellard,* 363 Mass. 693, 707 (1973). Cf. *Schofield* v. *Merrill, supra.* We have also stated a willingness to consider further extensions, on a case-by-case basis, to cover appropriate classes of trespassers. *Mounsey, supra* at 707 n.7. See *Pridgen, supra* at 712-713. The plaintiff contends that his requested instruction states the rule in this jurisdiction. He cites our language in *Soule* v. *Massachusetts Elec. Co.,* 378 Mass. 177, 182 (1979), that "there is a common law duty of reasonable care by a landowner or occupier to prevent harm to foreseeable

---

are slight as compared with the risk to children involved, and (*e*) the land owner fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

child trespassers." Because these words are separated from the context which gives them meaning in *Soule,* we cannot agree.

A careful reading of *Soule* makes it clear that the duty of reasonable care owed by a landowner to a child trespasser is applicable only where a plaintiff would fail to appreciate his peril because of his youth. In *Soule,* we said that "if the Legislature had not first enacted G. L. c. 231, § 85Q, in 1977, we would probably have applied the rule of § 339 of the Restatement (Second) of Torts [1965], which is practically identical to that statute, in this case." *Id.* at 184. Thus, our decision in *Soule* is read properly to recognize a common law rule that is indistinguishable in its elements from the statute or from its twin, § 339 of the Restatement (Second) of Torts (1965). Both the Restatement § 339 and the statute, when read in light of our decision in *Schofield* v. *Merrill, supra,* yield the result that no duty of reasonable care is owed to foreseeable child trespassers unless they are shown to have been persons who "because of their youth do not discover the condition or realize the risk involved." Compare Restatement (Second) of Torts § 339 (c) (1965), and G. L. c. 231, § 85Q (c).[4] Therefore, it would have been error for the judge to give the charge requested. The judge instructed the jury in accordance with the rule enunciated in *Soule.* There was no error.[5]

---

[4] If a trespasser's youthful capacity for appreciating risks were irrelevant, the distinction between child trespassers and adult trespassers would be obliterated. This court has decided, however, to maintain that distinction. See *Schofield* v. *Merrill, supra* at 254. But see *id.* at 254-256 (Liacos, J., dissenting).

[5] It was stated also in *Soule* that the common law duty of reasonable care applies "[w]here the trespasser is a child, who is unable to appreciate danger as intelligently as an adult," *Soule, supra* at 184. The plaintiff contends that "[a]t the very most, *Soule* only requires the jury [*sic*] to show that the Plaintiff appreciated the risk as an adult, . . . and the jury in this case should have been instructed accordingly." However, the plaintiff does not demonstrate how the judge failed in his charge to convey that our common law rule applies only to plaintiffs whose capacity to appreciate danger is not fully adult. The judge clearly conveyed this idea, in substance if not in the words sought by the plaintiff. Nothing more was required. See *McComb* v. *New England Transp. Co.,* 325 Mass. 221, 223 (1950), and cases cited. We note also that, in response to special question no. 1, the jury found that the plaintiff was able to "appreciate and realize the risk involved in trespassing upon the Railroad property."

b. *Requested instruction no. 4.* The plaintiff claims that the judge erred in failing to give the plaintiff's requested instruction no. 4, as follows: "Railroad employees may assume that an adult near a railroad track will exercise care for his own safety, but the railroad may not assume that a child observed on or near a railroad track will remove himself from the tracks and remain out of the way of the approaching train. The duty of care owed to a child is partially determined with reference to the propensity of children for unpredictable behavior."

At issue is whether the plaintiff was entitled to an instruction that railroad employees may not rely on children to remove themselves from the peril of oncoming trains.[6] The judge agreed to give the instruction. When actually charging the jury, however, he did not. He then declined to highlight the doubtful issue by correcting himself before the jury.[7]

---

[6] We treat the second sentence of request no. 4 as given, albeit not in the words sought. We see no meaningful difference between the thought that reasonable care may be warranted when dealing with children due to their unpredictability, and the idea, clearly expressed by the judge in his charge, that a duty of reasonable care is owed to children who are too young to appreciate risks. A child's propensity for acting unpredictably — for example, by chasing a ball into the street — is causally linked to his underdeveloped capacity for calculating the risk of doing so.

[7] The plaintiff also claims that the judge erred in failing to cure whatever prejudice may have resulted where, after the judge initially promised to give the substance of request no. 4, *supra,* the plaintiff's counsel addressed arguments based on that expected instruction to the jury in his summation. Assuming, without deciding, that in such circumstances "there may be error, even though the instructions that are ultimately given are legally correct, since a lawyer may have been misled as to the proper scope of his argument," J.W. Smith & H.B. Zobel, Rules Practice § 51.5, at 229 (1977), quoting Blackmar, Problems of Court and Counsel in Requests and Exceptions: How to Avoid Them, reprinted in 62 F.R.D. 251, 258 (1974), we note that the cited authority himself recommends remedial action only where it is demonstrable that the disparity between instructions promised and instructions given "affected the argument" of counsel to the jury. Blackmar, *supra* at 262. While the plaintiff's counsel read aloud at oral argument the sentence from his summation in which he promised the jury that they would be instructed in accordance with request no. 4, the summation itself does not appear in the record. Thus, we cannot say whether the judge's charge, as given, affected the plaintiff's argument to the jury. See Mass. R. A. P. 16 (a) (3), 365 Mass. 860 (1974), and Mass. R. A. P. 16 (e), as amended, 378 Mass. 925 (1979).

The authority cited by the plaintiff for the requested instruction is *Kalinowski* v. *Smith,* 6 Mass. App. Ct. 769 (1978). *Kalinowski* is inapposite. The Appeals Court treated the facts in that case as creating a situation "tantamount to that of the helplessly trapped child in *Pridgen.*" *Id.* at 771. A proper *Pridgen* charge was given in the case at bar. The Appeals Court also drew upon the law of other jurisdictions to state that "there is no right to presume that a child of tender years will either get out of the way or remain out of the way of an approaching train." *Kalinowski, supra* at 772, citing *Kowaleski* v. *Pennsylvania R.R.,* 103 F.2d 827 (3d Cir.), cert. denied, 308 U.S. 556 (1939). *Simmons* v. *Atlanta & W.P.R.R.,* 46 Ga. App. 93 (1932). *Davies* v. *Delaware, L. & W.R.R.,* 370 Pa. 180, 185-186 (1952). Assuming that *Kalinowski, supra* at 771, states a different rule (see note 6, *supra*) which we would adopt if we were presented with a case requiring us to decide the question, we note that the Appeals Court limited the applicability of its rule to child plaintiffs "of tender years," *id.* at 772, and that the child plaintiff in *Kalinowski* was less than five years of age when injured.[8] In these circumstances, the judge could have decided in the proper exercise of his discretion that there was no evidence to show that the plaintiff was of such tender years as to be entitled to the benefit of *Kalinowski.* See *Kelsey* v. *Hampton Court Hotel Co.,* 327 Mass. 150, 154 (1951). There was no error.

2. *Juror misconduct.* On November 2, 1984, in support of his motion for new trial and to question a juror, the plaintiff filed affidavits executed by several attorneys. The plaintiff's

---

[8] The child plaintiffs in the cases relied on by the Appeals Court were all considerably younger than McDonald. In *Simmons, supra* at 95, the boy was only seven; in *Davies, supra* at 181, the boy was eleven. In *Kowaleski, supra* at 828, the plaintiff was twelve, but the court declined to find error where the rule was not applied to one of his age. The judge in *Kowaleski* held that railroad employees were entitled to presume that warned children would leave the tracks in time to escape harm if they were "children who from their size and age appear capable of appreciating their peril." *Id.* at 830. Clearly then, *Kalinowski* would take on new meaning, and perhaps an unintended meaning, if it were held to apply to a sixteen year old like McDonald.

trial counsel, Michael G. West, averred that, on October 23, 1984, five weeks after the jury had rendered its verdict, he was approached by another attorney, William J. Brown, Jr. Mr. Brown allegedly told Mr. West that, while the trial of this case was in progress, a juror named Andrew DeLevo had approached him repeatedly; that DeLevo had told Mr. Brown that he "hated" Mr. West's firm because of its efforts to collect a debt from him; that he was consequently "out to get" the firm; that he "controlled 4 votes on the jury"; and that he had asked Mr. Brown to query Mr. West whether he would trade "the payment of money or the cancellation of [DeLevo's] debt or both" for "favorable treatment" in the case at bar. According to Mr. West, Mr. Brown said that he had told DeLevo that he, Brown, would not take part in jury tampering.

The plaintiff also filed affidavits from past and current members of Mr. West's firm, together with court records. As the judge later found, these established that Mr. West's firm had in fact sued DeLevo to collect a debt owed a client of the firm, that the firm had caused DeLevo to be arrested twice for failure to appear in court, and that DeLevo had threatened the firm's personnel with bodily harm on two occasions prior to the trial of the case at bar.

The judge heard oral argument on the plaintiff's motion to question DeLevo, but he did not subpoena DeLevo or Mr. Brown. Rather, he forwarded the plaintiff's documentation to the district attorney for Hampden County, then stayed the proceedings pending completion of criminal investigation of Mr. West's allegations.

On December 13, 1984, Mr. Brown was questioned under oath by two State Troopers. He confirmed that he had discussed DeLevo's debt with Mr. West, as the latter had charged, and he admitted telling Mr. West that DeLevo "hated the firm [for] the way they were trying to collect the money from him." However, Mr. Brown denied the substance of the remainder of Mr. West's affidavit.

The district attorney's investigation began and ended with the questioning of Mr. Brown. No criminal charges were brought. The judge denied the plaintiff's motion to question

DeLevo because (a) a juror's bias is not an extraneous matter, and (b) the record did not justify further inquiry by the judge as to the possible bartering of jurors' votes. In essence, the judge ruled that he had no discretion to permit the questioning of DeLevo concerning his possible bias; and he ruled that, while he had discretion to permit inquiry concening DeLevo's conduct as it may have amounted to jury tampering, he chose not to do so because the evidence before him did not warrant it.

a. *Allegations of bias.* Jurors are disqualified from testifying about their deliberations except to establish "the existence of extraneous 'disturbing' influences." *Commonwealth* v. *Fidler,* 377 Mass. 192, 197 (1979). Accordingly, "evidence concerning the subjective mental processes of jurors, such as the reasons for their decisions" is not admissible, *id.* at 198, and judges are barred from sanctioning or conducting such interrogations, just as attorneys are forbidden to question jurors about their deliberative thoughts. The plaintiff's counsel conceded at oral argument that a juror's bias toward a party or his lawyer is not an extraneous, disturbing influence, as that term has been defined by the decisions of this court. We agree. See *Commonwealth* v. *Grant,* 391 Mass. 645, 653 (1984). *Commonwealth* v. *Fidler, supra* at 197. Even though the judge was faced with uncontested and corroborated allegations of DeLevo's hatred for the plaintiff's attorney's firm, he had no authority to conduct, or permit, any questioning of DeLevo concerning his alleged bias.[9]

---

[9] The plaintiff's reliance in his brief on *Commonwealth* v. *Dixon,* 395 Mass. 149 (1985), and *Harrington* v. *Worcester L. & S. St. Ry.,* 157 Mass. 579 (1893), is misplaced. In both, the matters at issue were clearly extraneous and therefore properly subject to inquiry. See *Dixon, supra* at 151 (allegation that communications between a witness and a third party were made known to a juror); *Harrington, supra* at 583 (juror took private view of the scene of an accident). See also *Fidler, supra.*

The plaintiff further contends that the judge erred by relying too heavily on his ruling that, where a juror had been asked under oath to reveal any bias or reason why he could not stand indifferent, and where the juror by his silence had testified to a lack of bias, it was not proper to assume, or to speculate, that the juror was biased because of past events. No authority is cited, however, to support the claim of error. so the question need not be addressed. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919

b. *Allegations of attempted jury tampering*. The plaintiff argues that DeLevo's alleged objective misconduct, as opposed to his subjective bias, was so "serious" as to require that he be interrogated. Admittedly, "[w]here a case is close, . . . a judge should exercise discretion in favor of conducting a judicial inquiry." *Commonwealth* v. *Dixon,* 395 Mass. 149, 153 (1985). And it cannot be doubted that conduct amounting to jury tampering would amount to an extraneous influence concerning which a juror may be questioned. *Id.* But "[p]ostverdict interview should be initiated *only* if the court finds some suggestion that there were extraneous matters *in the jury's deliberations*" (emphasis supplied). *Commonwealth* v. *Fidler, supra* at 203.

None of the evidence before the judge was of this character. Rather, it was alleged that DeLevo improperly approached Mr. Brown outside the jury's presence, and that he sought to strike a deal with nonjurors. No objectively verifiable fact was alleged from which the judge could infer that DeLevo's scheme, if it existed, was ever put in operation or that it ever infected the jury's deliberations. Mr. West's allegation that DeLevo claimed to control four jurors' votes was redolent of tampering activity, but the judge was warranted in concluding that this allegation was intrinsically unreliable because based on triple hearsay. This is especially true where the allegation was flatly denied under oath by the affiant's alleged source. No facts were alleged tending to show that DeLevo's claim, if he made it, was anything more than a boast. The evidence, then, of actual tampering with the jury's deliberations was virtually nonexistent. When the judge denied the plaintiff's motion to question DeLevo, his exercise of discretion was sound.

Nor did the judge err in denying the plaintiff's motion for a new trial, which was based on prejudice supposed to have

(1975). If it is the plaintiff's position that DeLevo's "hatred" for Mr. West's firm indicates that DeLevo failed to reveal a bias during voir dire, commentators and courts are generally of the opinion that "it is still better to favor the privacy of jurors for the purpose of fostering free discussion among jurors" than to probe for evidence of dissembling at voir dire. *United States* v. *Kimberlin,* 527 F. Supp. 1010, 1012 (S.D. Ind. 1981). See, e.g., 3 J. Weinstein & M. Berger, Evidence par. 606[04], at 606-33, 606-34 (1981).

arisen from DeLevo's misconduct. To carry his burden in this regard, the plaintiff must demonstrate to this court that the denial, "unless reversed, will result in manifest injustice." *Sharpe, petitioner,* 322 Mass. 441, 445 (1948). *Commonwealth* v. *Ortiz,* 393 Mass. 523, 537 (1984). See *Commonwealth* v. *Royster,* 15 Mass. App. Ct. 970, 971 (1983). The plaintiff contends that DeLevo's alleged attempt to make a deal for a favorable verdict was potentially so damaging as to be intolerable. Here, both the trial judge and the district attorney have decided that no prosecution was warranted in this case. In these circumstances, we cannot say that Mr. West's allegations are substantial enough or so necessarily reliable as to taint the jury's verdict. We conclude that the judge did not abuse his discretion in refusing to grant a new trial.

*Judgment affirmed.*