BRIAN MATHIS[1] vs. MASSACHUSETTS ELECTRIC COMPANY
& another.[2]

Norfolk. November 5, 1990. - January 29, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Negligence*, Comparative, One owning or controlling real estate, Child
trespasser. *Practice, Civil*, Instructions to jury, Amendment.

The comparative negligence statute, G. L. c. 231, § 85, is applicable to an
action brought under the child trespasser statute, G. L. c. 231, § 85Q,
inasmuch as a landowner's duty to a child trespasser is not inconsistent
with the doctrine of contributory or comparative negligence. [258-263]
In a negligence action involving a child trespasser the judge correctly in-
structed the jury with respect to the standard of care to which a child is
to be held in considering the plaintiff's comparative negligence. [263-
264]
In a civil action the judge correctly denied the plaintiff's motion to amend
the complaint to add trespass counts against the defendants, filed four
years after the filing of the complaint, where the lateness was unex-
cused and the proposed amendment stated no viable ground of recovery.
[264-265]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 23, 1984.

The case was tried before *Robert W. Banks*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Jeffrey N. Roy* (*Carol R. Steinberg* with him) for the
plaintiffs.

*Andrew B. Estrine* (*Steven E. Thomas* with him) for Mas-
sachusetts Electric Company.

---

[1] By his mother and next friend, Catherine Thomas.
[2] New England Telephone and Telegraph Company.

*Bartlett L. Thomas* for New England Telephone and Telegraph Company.

LIACOS, C.J. During the evening of June 23, 1983, the plaintiff, Brian Mathis, sixteen years and eight months old, and three of his friends were gathered in front of the house located directly across from Brian's home in Franklin. Brian crossed the street and, to impress his friends, began climbing a utility pole, jointly owned by defendants Massachusetts Electric Company (MEC) and New England Telephone and Telegraph Company (NET). The pole was located on the property of the plaintiff's parents. It was supported by two guy wires, the upper one installed and owned by MEC, the lower one installed and owned by NET. As Brian climbed the pole, he came in contact with several telephone, cable television, and electrical wires which did not harm him. When Brian reached the top of the utility pole, he grabbed the primary electrical wire and received an electrical shock. Brian fell to the ground. He sustained severe injuries and burns.

In March, 1984, the plaintiff filed suit in Superior Court alleging that MEC's negligence caused his injuries. His mother sought damages for loss of consortium.[3] On May 6, 1988, the plaintiffs moved to amend the complaint to add counts alleging trespass; the plaintiffs alleged that there was no recorded easement authorizing the defendants to place the guy wires on the family's property. A judge denied the motion and, on July 7, 1988, the Appeals Court denied the plaintiffs' interlocutory appeal.[4]

The case proceeded to trial before a jury. On November 23, 1988, the case was submitted to the jury to decide a

[3]On February 21, 1985, MEC filed a third-party complaint against NET for contribution and indemnification. On October 14, 1987, the plaintiffs filed an amended complaint, adding claims against NET for negligence and loss of filial consortium. On December 1, 1987, NET filed cross claims against MEC for contribution and indemnification.

[4]The judge denied a renewed motion by the plaintiffs to amend the complaint to add the trespass counts. Subsequently, the mother voluntarily dismissed her claim for loss of filial consortium.

number of special verdict questions. Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974). The jury found that MEC violated its duty toward foreseeable child trespassers under G. L. c. 231, § 85Q (1988 ed.). The jury also found that the plaintiff was comparatively negligent. The jury determined that the plaintiff was 75% at fault, while MEC was 25% at fault. Thus, the plaintiff was barred, under the comparative negligence statute, G. L. c. 231, § 85 (1988 ed.), from recovering any damages from MEC. The jury found that NET was not negligent. Judgment for the defendants was entered on November 30, 1988. MEC's third-party complaint and NET's cross claims against MEC were dismissed.

The plaintiff filed a motion for a new trial, and a motion to amend the judgment and for a new trial to assess damages. The judge denied both motions. The plaintiff appeals. He argues that (1) the lower court erred by denying his motion to amend the judgment and for a new trial on damages because the comparative negligence statute, G. L. c. 231, § 85, is inapplicable to an action brought under the child trespasser statute, G. L. c. 231, § 85Q; (2) the judge improperly instructed the jury on the issue of comparative negligence; and (3) the denial of his motion to amend the complaint to add counts for trespass against both defendants was error.

1. *Comparative negligence.* The plaintiff claims that landowners who violate the child trespasser statute are strictly liable and therefore cannot avail themselves of the principle of comparative negligence. See *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 353-356 (1983) (comparative negligence has no application to strict liability breach of warranty actions).[5] The child trespasser statute states:

---

[5] Our comparative negligence statute states in part that, "[c]ontributory negligence shall not bar recovery in any action by any person or legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the total amount of negligence attributable to the person or persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made." G. L. c. 231, § 85 (1988 ed.).

"Any person who maintains an artificial condition upon his own land shall be liable for physical harm to children trespassing thereon if (a) the place where the condition exists *is one upon which the land owner knows or has reason to know* that children are likely to trespass, (b) the condition is one of which *the land owner knows or has reason to know* and *which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm* to such children, (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, (d) the utility to the land owner of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and (e) *the land owner fails to exercise reasonable care* to eliminate the danger or otherwise to protect the children" (emphasis supplied). G. L. c. 231, § 85Q (1988 ed.).[6]

The plaintiff argues that once the five statutory conditions are met, the owners are strictly liable, and therefore negligence principles are inapplicable.

---

[6]The language of § 85Q is virtually identical to the language of § 339 of the Restatement (Second) of Torts (1965). We have previously recognized that the scope of § 85Q and § 339 of the Restatement is identical. See *Soule* v. *Massachusetts Elec. Co.*, 378 Mass. 177, 184 (1979). See also *McDonald* v. *Consolidated Rail Corp.*, 399 Mass. 25, 29 (1987) (common law rules, § 85Q and § 339 of the Restatement are virtually "indistinguishable").

Although, in our view, § 85Q is not applicable because the plaintiff's injuries did not occur on the defendants' "own land," and therefore the defendants are not "landowners" within the meaning of the statute, the parties have assumed throughout that § 85Q applies to utility poles. Since the parties have made this the "law of the case," we shall make the same assumption. See *Commonwealth* v. *Thompson*, 382 Mass. 379, 382 (1981); *Kagan* v. *Levenson*, 334 Mass. 100, 106 (1956). We believe, however, that this case should be governed by common law principles and not by § 85Q. See *Soule* v. *Massachusetts Elec. Co.*, *supra* at 182 ("we hold that there is a common law duty of reasonable care by a *landowner or occupier* to prevent harm to foreseeable child trespassers" [emphasis supplied]).

Neither the statute nor the common law doctrine of *Soule*
v. *Massachusetts Elec. Co.*, 378 Mass. 177 (1979), imposes
liability on landowners or others irrespective of their degree
of fault or knowledge of the risk involved. See *Briggs* v. *Tay-
lor*, 397 Mass. 1010 (1986) (affirming directed verdict in
§ 85Q action where plaintiffs failed to show both that land-
owner did not exercise reasonable care and that it knew or
should have known about dangerous condition). Compare
*Bencosme* v. *Kokoras*, 400 Mass. 40, 43 (1987) (owners of
residential properties are strictly liable under the lead paint
statute, G. L. c. 111, § 199 [1988 ed.]).

Under the traditional common law rule, a landowner did
not have a duty toward a child trespasser, except to refrain
from wanton and wilful conduct. *Soule* v. *Massachusetts
Elec. Co., supra* at 180. *Urban* v. *Central Mass. Elec. Co.*,
301 Mass. 519, 523 (1938). The child trespasser statute soft-
ened the "Draconian" common law rule. *Soule* v. *Massachu-
setts Elec. Co., supra.* By enacting the statute, the Legisla-
ture followed the national trend towards imposing on
landowners a uniform standard of care regardless of the sta-
tus of the injured party. See *id.* at 182-184.[7]

The child trespasser statute and the common law impose
on landowners a duty of reasonable care, a negligence stan-
dard of liability. See *McDonald* v. *Consolidated Rail Corp.*,
399 Mass. 25, 27 (1987); *Briggs* v. *Taylor, supra*; *Schofield*
v. *Merrill*, 386 Mass. 244, 246 n.2 (1982); *Soule* v. *Massa-*

---

[7]In *Mounsey* v. *Ellard*, 363 Mass. 693, 707 (1973), this court held that
landowners owed the same duty of reasonable care to all lawful entrants
regardless whether they were considered invitees or licensees at common
law. Prior to *Mounsey*, landowners owed invitees a duty of reasonable
care, while they only owed licensees a duty not to inflict wanton or wilful
harm. *Id.* at 696-697. In *Pridgen* v. *Boston Hous. Auth.*, 364 Mass. 696,
710-711 (1974), we held that a landowner has a duty of reasonable care
towards a helplessly trapped trespasser. The court has refused, however, to
extend the reasonable care standard to cases involving adult trespassers
who are not helplessly trapped. *Schofield* v. *Merrill*, 386 Mass. 244
(1982). Compare, however, the dissent by three Justices in *Schofield,
supra* at 254-259 (distinction based on "status" of a plaintiff ought to be
discarded).

chusetts Elec. Co., *supra* at 184.[8] See also W. Prosser & W. Keeton, Torts § 59, at 401-402 (5th ed. 1984) (attractive nuisance doctrine gives child trespasser much of the protection of ordinary negligence doctrine).

Since the child trespasser statute, G. L. c. 231, § 85Q, imposes on landowners a duty of reasonable care, and creates liability based on negligence principles, the comparative negligence defense is available to defendants. *O'Malley* v. *Putnam Safe Deposit Vaults, Inc.*, 17 Mass. App. Ct. 333, 343-344 (1983). "[T]he policy of negligence liability presumes that people will, or at least should, take reasonable measures to protect themselves and others from harm. . . . However, if the injured person's unreasonable conduct also has been a cause of his injury, his conduct will be accounted for in apportioning liability for damages." *Correia* v. *Firestone Tire & Rubber Co.*, *supra* at 354.

The plaintiff argues that a finding by a jury that children, because of their youth, did not "discover the condition or realize the risk involved in intermeddling" with the artificial condition, G. L. c. 231, § 85Q (*c*), is irreconcilable with the doctrine of comparative negligence. The plaintiff also argues that, even if such a finding by a jury is not irreconcilable with the doctrine of comparative negligence, the jury's answers to the special verdict questions in this case were inconsistent. The jury found that "the plaintiff, Brian Mathis, because of his youth, fail[ed] to appreciate the risk and danger involved or lack[ed] the understanding to evaluate the peril involved in intermeddling with the subject pole and its attachments." The jury also found that the plaintiff was negli-

---

[8]In *Soule*, the plaintiff child was injured twenty-three years before the Legislature enacted the child trespasser statute. In that case we stated that if the Legislature had not enacted § 85Q, we would have applied § 339 of the Restatement. We therefore held, as a matter of common law, that landowners have a duty to exercise reasonable care toward a child trespasser. *Id.* Comment b of § 339 of the Restatement states that a landowner owes "a limited obligation to the child [trespasser], falling short of a duty to prevent all foreseeable harm to him, but requiring reasonable care as to those conditions against which he may be expected to be unable to protect himself."

gent, and that his negligence was a proximate cause of his injuries. The plaintiff asks us to order a new trial because the jury's answers were inconsistent, and because they cannot be harmonized. See *Solimene* v. *B. Grauel & Co., KG,* 399 Mass. 790, 800-801 (1987), and cases cited.

The child trespasser statute addresses a landowner's duty toward a child trespasser. In a case brought under the statute, a landowner's duty of reasonable care toward a foreseeable child trespasser will be breached only if the five conditions of the statute are satisfied. "[I]f the child is fully aware of the condition, understands the risk which it carries, and is quite able to avoid it, he stands in no better position than an adult with similar knowledge and understanding. This is not merely a matter of contributory negligence or assumption of risk, but of lack of duty to the child" (footnotes omitted). W. Prosser & W. Keeton, Torts, *supra* at 408-409. It is only after the jury determine that the landowner breached his or her duty toward the child that the child's possible negligence is taken into account.

The plaintiff is correct when he argues that an owner's liability under the child trespasser statute and a child's possible contributory negligence are two separate issues. "The question of the child's contributory negligence is a separate problem that must be carefully distinguished from that of the land occupier's duty." 5 F. Harper, F. James & O. Gray, Torts § 27.5 n.60 (1986). The fact that they are two separate issues, however, does not make them irreconcilable.[9]

---

[9]The majority of the courts which have addressed this issue have held that a landowner's duty to a child trespasser is not inconsistent with the doctrine of contributory or comparative negligence. See *Pocholec* v. *Giustina,* 224 Or. 245, 252-255 (1960); *Schneider* v. *Seattle,* 24 Wash. App. 251, 256-257 (1979); *Nechodomu* v. *Lindstrom,* 273 Wis. 313, 327a-327c (1956). See also *Courtell* v. *McEachen,* 51 Cal. 2d 448, 454-455 (1959); *Greene* v. *DiFazio,* 148 Conn. 419, 424-425 (1961). But see *Larnel Builders, Inc.* v. *Martin,* 110 So. 2d 649, 650 (Fla. 1959).

The commentators are in accord. See, e.g. 5 F. Harper, F. James & O. Gray, *supra* at § 27.5 n.57. "If the real basis of the doctrine here discussed is the foreseeability of unreasonable harm involved in the defendant's conduct, then the discretion of the child should be relevant only to deciding the question of whether or not, in the light of that discretion, unreasonable

The possible negligence of a child is "judged by the standard of behavior expected from a child of like age, intelligence, and experience." *Mann* v. *Cook*, 346 Mass. 174, 178 (1963).[10] It is not inconsistent, therefore, for a jury to find that the landowner unreasonably created a dangerous condition, the risks of which would not ordinarily be discovered by children, while at the same time finding that even though the plaintiff failed to realize the risk, he or she acted without the degree of care expected from a child of similar age, intelligence, and experience. We cannot, as the plaintiff urges us, impose a judicially-created rule which would immunize child trespassers from their own negligence. The judge did not err in denying the plaintiff's motion to amend the judgment and for a new trial.

2. *Jury instructions.* The judge instructed the jury that, in considering Brian's comparative negligence, they should "judge him by the standard of behavior expected from a child of like age, intelligence, emotional being, experience, by what he is inside him as a child."[11] The plaintiff argues that

---

harm was foreseeable. . . . Of course, even if the child is held to be within the attractive nuisance doctrine, the question of his contributory or comparative negligence, in the light of all relevant circumstances, will have to be decided. But that question is different from the one of whether or not the protection of the attractive nuisance doctrine should be available to him." (Citations omitted.)

[10]Whether a child was negligent is a question for the jury. See *Bartley* v. *Almeida*, 322 Mass. 104, 107 (1947); *Brown* v. *Daley*, 273 Mass. 432, 436 (1930).

[11]The judge instructed the jury that, "[w]hen you consider comparative negligence, negligence if any of Brian Mathis, I want you to remember that the standard of care in negligence cases is how a person of ordinary prudence acts in similar circumstances. If you reach that point in this case, in considering comparative negligence, you would have made a decision that the status of Brian Mathis under the law as I gave it to you would be that of a child. Therefore, you are not to judge him by the standard of an adult. Rather you are to judge him by the standard of behavior expected from a child of like age, intelligence, emotional being, experience, by what he is inside him as a child. You are to ask yourself how a child of that age, intelligence, experience, or makeup would have acted under the circumstances which existed in this case. Once you have reached that decision, you are to determine whether he acted appropriately or inappropriately, and you are to compare the negligence. It is a subjective consideration."

the instructions were defective because they failed to instruct the jury to take into account his learning disabilities, hyperactivity, and other limitations in his ability to know and appreciate danger. There was no error. See *Blake* v. *Springfield St. Ry. Co.*, 9 Mass. App. Ct. 912 (1980) (instruction which stated that child should be held to "standard of a typical eight-year-old" included within its scope intelligence and experience characteristics).

The judge in this case explained to the jury that a child is not to be held to the same standard of care as an adult. He instructed the jury to judge Brian's actions, taking into account his age, intelligence, and experience. The judge's instructions adequately conveyed to the jury the standard of care to which children are held.

3. *Denial of motion to amend.* The plaintiff argues error in the denial of his motion to amend the complaint to add trespass counts against both MEC and NET. The plaintiff claims that the defendants did not have an easement authorizing them to place the utility pole inside his family's property, and that therefore, the defendants committed a trespass against him.

The decision whether to grant a motion to amend is within the discretion of the judge, but leave should be granted unless there are good reasons for denying the motion. *Goulet* v. *Whitin Mach. Works, Inc.*, 399 Mass. 547, 549 (1987). *Castellucci* v. *Unites States Fidelity & Guar. Co.*, 372 Mass. 288, 289-290 (1977). See Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974). Such reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Castellucci, supra* at 290, quoting *Foman* v. *Davis*, 371 U.S. 178, 182 (1962).

In this case, the plaintiff moved to amend over four years after filing the complaint. The plaintiff has not given reasons for the delay. We have stated that an unexcused delay in seeking to amend is a valid basis for denial of a motion to

amend. *Barbosa* v. *Hopper Feeds, Inc.*, 404 Mass. 610, 621-622 (1989).

In addition, the plaintiff's proposed amendment would have been futile. There is no relationship between the defendants' alleged trespass and the plaintiff's injuries. See *Soule* v. *Massachusetts Elec. Co.*, 378 Mass. 177, 179 n.4 (1979). There was no error.

*Judgment affirmed.*