Zobel, J.
Plaintiff seeks to recover for injuries sustained at the Allied Veterans Memorial Pool in Everett, Massachusetts (“the MDC pool").
Plaintiff, aged 16 years and 8 months at the time of the accident, was an incoming senior at Everett High School, tailback on the varsity football team and active participant in recreational basketball and a formal baseball program. He worked at a restaurant, earning enough money to buy a car. At age fourteen, he had worked at a night club, directing cars.
Notwithstanding that he lived in Everett a mile-and-a-half from the MDC pool, Plaintiff denies ever having swum there more than once although two of his childhood friends claim to have frequently accompanied him in the pool. Plaintiff learned to swim at age five or six, and thereafter swam at pools of friends and relatives, at the beach, and in reservoirs. He knew how to swim and knew several different strokes, he knew how to dive, and how to do a shallow dive. He was also aware that in-ground pools generally have shallow and deep ends.
By the age of sixteen, Plaintiff understood the danger of diving into three feet of water. He believed that it might be safe to do a relatively shallow dive into four feet of water, but he knew that if he hit his head on the concrete bottom, he would be injured. Plaintiff also knew that diving was not the proper use of a water slide.
On the night of the accident, Plaintiff, his brother Charlie, and their friends, Jonathan O’Hearn, Jason Elfman, and John Garafolo “cruised” Everett in Plaintiffs car. It was a hot summer night and they were looking for a pool to go swimming. The group drove by the MDC pool, saw a truck in the parking lot, and decided to enter although it was after midnight and the pool was closed for the night. The pool lights were not on, no lifeguards were on duly, and Plaintiff knew that the pool was not officially open. For present purposes, we accept as true Plaintiffs assertion that he saw people swimming in the pool and that the gates were wide open.
Two fences surround the MDC pool, an inner fence around the pool and a perimeter fence surrounding the entire facility. Plaintiff contends that at the time of the accident, vandals had created a large hole in each fence. He contends that if the gates had been locked and the fences in good repair, he would not have vaulted the barrier and entered the pool.
On the present record, we take it as true that the MDC knew that the fences were subject to repeated attacks. However, the evidence also indicates that MDC employees repaired the fence on each occasion.
At its shallow end, the MDC pool sports awide slide, approximately eight feet high, twisting 270 degrees. Within a few feet of its lower end, a depth marker appears indicating three feet, seven inches of water. Diving is prohibited at all times off the slide and off the deck of the pool in the shallow end. When the pool is open, the lifeguards on duty strictly enforce these rules. By way of emphasis, the words “No Diving” appear prominently on the pool deck, directly adjacent to the shallow areas.
Plaintiff states that he and his friends were in the pool for approximately 20 minutes. He denies being in the shallow end during that time although his friends *37 say that the group played in the shallow end for ten to fifteen minutes. Plaintiff claims that during the time he was at the pool that evening, he repeatedly jumped in and then got out of the pool to jump in again and that he never touched the bottom. In addition, he claims that he never saw any of his friends standing in the pool.
Immediately before Plaintiffs accident, Jonathan O’Heam climbed up on the slide, stood half way down where the slide twists, and jumped off feet first into the shallow end of the pool. Right behind O’Hearn was Plaintiff who, while standing half way down the slide where the slide twists backward, yelled “Watch this!” (or something similar). From the point on the slide from which he dove, Plaintiff stood more than five feet above the water’s surface.
Although he knew, from his experience on diving boards, that they were never sited at a pool’s shallow end because diving from a substantial height into shallow water would be dangerous, Plaintiff then dove, head first, into the shallow water, striking his head on the pool bottom.
When Plaintiff came up, his head was “split open” and covered with blood. He had sustained serious head, neck, and spinal injuries. Later, at his deposition, Plaintiff conceded “the stupidity that it happened,” and that the accident was his fault.
The Commonwealth claims that Plaintiff cannot establish liability under the applicable statute, G.L.c. 231, §85Q (“the child trespass statute”). Plaintiff argues that he was not a trespasser at the time of the accident and thus that an ordinary standard of care applies. In the alternative, Plaintiff claims that even if he were a trespasser, the Commonwealth owed him a duty equivalent to the standard of the child trespass statute; he claims he has met his burden under this statute. Finally, Plaintiff argues that the Commonwealth acted wantonly, willfully, and recklessly; therefore, he says, if he be taken as an adult, he is entitled to recover.
The issue of Plaintiff s status vis a vis the MDC pool is virtually irrelevant to any determination of the MDC’s liability, cf. Soule v. Massachusetts Electric Co., 378 Mass. 177, 180 (1979); Mounsey v. Ellard, 363 Mass. 693, 707 n.7 (1973). Plaintiff entered the MDC pool either through a hole in the fence or through a gate with a broken lock; after midnight; when he knew the pool was closed; when he could see that no lights were on; when he knew or should have known that no lifeguards were on duty.
Lacking any right or lawful authority to be on the MDC pool grounds, let alone any valid reason to be there, Plaintiff, by any reasonable view of the undisputed facts, was undertaking a venture that any normal 16-year-old should have recognized for what it was: a foolish, dangerous, unnecessary frolic.
Plaintiff brushes this aside, insisting that if only the MDC had “kept its property properly fenced as required by law, [Plaintiff] would not have trespassed and would not have subjected himself to his own teenage irresponsibility.” This suggestion is both unwarranted and unpersuasive.
The statutory exception to the general rule of non-liability to a trespasser, G.L.c. 231, §85Q, looks to ameliorate the common law’s harshness as to children, Mathis v. Massachusetts Electric Co., 409 Mass. 256, 260 (1991):
Any person who maintains an artificial condition upon his own land shall be liable for physical harm to children trespassing thereon if (a) the place where the condition exists is one upon which the land owner knows or has reason to know that children are likely to trespass, (b) the condition is one of which the land owner knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, (d) the utility to the land owner of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and (e) the land owner fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.
(Emphasis supplied.)
A child trespasser cannot recover without establishing all the statutoiy conditions, Mathis v. Massachusetts Electric Co., supra, at 262. Resolution of the case at bar turns on the simple fact that Plaintiff was not a child who, because of his youth, did not discover the condition or realize the risk involved in the activity he rashly undertook. Put very simply, Plaintiff injured himself because he engaged in activities that, according to ordinary norms of human behavior, society expects mentally sound 16-year-olds to avoid, McDonald v. Consolidated Rail Corp., 399 Mass. 25, 29 (1987); see also, Phachansiri v. City of Lowell, 35 Mass.App.Ct. 576, 579 (1993).
“If the child is fully aware of the condition, understands the risk which it carries, and is quite able to avoid it, he stands in no better a position than an adult with similar knowledge and understanding. This is not merely a matter of contributory negligence or assumption of risk, but lack of duty to the child,” Mathis v. Massachusetts Electric Co., supra, at 262 (no liability to plaintiff aged 16 years and 8 months injured by an electrical wire while climbing utility pole to impress his friends).
The law protects children “from those conditions which, though observable by adults, are likely not to be observed by children, or which contain the risks *38 the full extent of which an adult would realize but which are beyond the imperfect realization of children. It does not extend to those conditions the existence of which is obvious even to children and the risk of which should be fully realized by them,” Restatement (Second) Torts §339, comment i. It does not hold a landowner responsible for the harm resulting to children resulting from a reckless “spirit of bravado” or in gratifying “some other childish desire . . . with as full a perception of the risks which they are running as though they were adults,” id.
A fortiori when (a) the “child" is in fact an entering high school senior, an experienced swimmer, thoroughly familiar with swimming pools and their hazards; and (b) the danger is diving off a slide at the sallow end of a darkened, closed pool.
“Although negligence questions involving issues of what is reasonably foreseeable are ordinarily left to the jury, there are instances when the judge may decide them as a matter of law, where no rational view of the evidence would warrant a finding of negligence.” Glick v. Prince Italian Foods, Inc., 25 Mass.App.Ct. 901, 902 (1987) (rescript).
Plaintiff argues that, even if considered an adult, he is entitled to recover because the MDC’s actions were willful, wanton, or reckless. Nothing in the record supports this allegation.
ORDER
Accordingly, it is Ordered, that Defendants’ Motion for Summary Judgment be, and the same hereby is, Allowed; and it is Further Ordered, that Judgment enter forthwith as follows:
Complaint Dismissed, with prejudice.